## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## SOUTH BEND DIVISION

| | | |
|---|---|---|
| MELINDA LITSINGER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-CV-613-DRL-MGG |
| | ) | |
| FOREST RIVER, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Pending and ripe before the Court are (1) Plaintiffs' Amended Motion for

Sanctions Against Defendant Sirpilla RV Centers, LLC [DE 49] filed on March 19, 2020;

(2) Plaintiffs' Amended Motion for Sanctions Against Defendant Forest River, Inc. [DE

52] filed on March 26, 2020; and (3) Defendants' Motion to Strike Portions of Plaintiffs'

Reply Brief or in the Alternative a Request for Sur-Reply [DE 61] filed on April 17, 2020.

The sanctions motions were each referred to the undersigned for a report and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b), and N.D.

Ind. L.R. 72-1(b).  [DE 50, DE 53]. As Defendants' Motion to Strike pertains to one of the

referred sanctions motions, the undersigned will address it here as well.

## I.    RELEVANT BACKGROUND

This suit involves multiple claims arising out of Melinda and James Litsinger's

("Plaintiffs'") purchase of a 2017 Forest River Dynamax RV recreational vehicle ("the

RV") from Defendant Sirpilla on June 16, 2017. Defendant Forest River manufactured

the RV.  In their complaint dated August 9, 2018, Plaintiffs allege that Sirpilla and Forest

River (collectively "Defendants") failed to correct multiple issues and defects with the RV despite their applicable warranties.

Now, Plaintiffs seek sanctions against both Sirpilla and Forest River based upon alleged discovery misconduct and noncompliance with this Court's Order dated February 7, 2020, which granted in part and denied in part a motion to compel filed by Plaintiffs. Defendants also ask the Court to strike portions of Plaintiffs' reply brief filed in support of the Sirpilla Sanctions Motion.

II. ANALYSIS

A.    Motion to Strike [DE 61]

Through their Motion to Strike, Defendants contend that Plaintiffs' reply brief in support of the Sirpilla Sanctions Motion [DE 59] was improper for two reasons. First, Defendants argue that the reply brief improperly raised new legal arguments in both the body of the brief and in an attached exhibit ("Exhibit 2"). Plaintiffs' Exhibit 2 outlined new information and discrepancies between documents and photographs Sirpilla produced in February 2019 as written discovery responses and additional documents and photographs discovered by Plaintiffs on March 6, 2020, while inspecting Sirpilla's files. [DE 59-2]. Second, Defendants argue that the reply brief exceeded the 15-page limit set forth in N.D. Ind. L.R. 7-1(e)(1). The reply brief was fifteen pages long and Exhibit 2 was three pages long. Defendants contend that Exhibit 2 presents legal arguments such that its three pages should be added to the reply brief page count.

Defendants' allegations suggest Plaintiffs have engaged in improper briefing tactics. Indeed, movants are generally not allowed to raise new issues or arguments in

a reply brief. *See Tokarz v. Ventaire Corp.*, 2006 WL 1793602, at *4 (N.D. Ind. June 26, 2006) (citations omitted). Regardless of whether they are raised in the reply brief itself or as an exhibit, issues and arguments newly raised on reply are generally viewed as untimely and waived. *United States v. Desotell*, 929 F.3d 821, 826 (7th Cir. 2019); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008); *Downey v. Union Pac. R.R.*, 411 F. Supp. 2d 977, 891 n.1 (N.D. Ind. 2006). Moreover, "[a]dditional pleadings that improperly circumvent page limits [established through local rules] are . . . subject to being stricken by the court." *Evans v. U.S. Dep't of Interior*, 135 F. Supp. 3d 799, 810 (N.D. Ind. 2015). Yet motions to strike are generally disfavored and should only be granted when contested material causes some prejudice to the movant. *Kuntzman v. Wal-Mart*, 673 F. Supp. 2d 690, 695 (N.D. Ind. 2009).

Here, the allegedly new information and arguments raised in Plaintiffs' reply brief and their accompanying Exhibit 2 are not outcome determinative as to the Sirpilla Sanctions Motion, as shown in the undersigned's analysis of the Motion below. Thus, even if Plaintiffs' reply brief and Exhibit 2 together exceed the proper scope of a reply brief, Defendants are not prejudiced by them. Accordingly, the undersigned recommends that Defendants' Motion to Strike be denied.

### B.    Amended Motion for Sanctions Against Sirpilla [DE 49]

Through their Motion, Plaintiffs ask this Court to sanction Sirpilla for its alleged failures to comply with discovery obligations under the Federal Rules of Civil Procedure and this Court's Order dated February 7, 2020.  First, Plaintiffs contend that Sirpilla willfully withheld 438 pages of documents and photographs that were

3

responsive to Plaintiffs' written discovery requests. Second, Plaintiffs argue that Sirpilla failed to comply with this Court's February 2020 Order by refusing to produce a list identifying by name individuals who performed repair attempts on the RV at issue in this case. Based on this alleged misconduct, Plaintiffs seek sanctions against Sirpilla in the form of striking its answer, entering default judgment against Sirpilla on the issue of liability, awarding Plaintiffs litigation costs and attorney fees incurred after February 21, 2019, and establishing a briefing schedule regarding damages in this matter.

### 1. Facts

On December 21, 2018, Plaintiffs served their First Set of Requests for Production of Documents ("Plaintiffs' Requests") upon Sirpilla requesting, *inter alia*, all repair orders, correspondences, and documents related to Plaintiffs and their RV. [DE 49-1 at 2–3]. On February 21, 2019, Sirpilla produced 230 pages of documents responsive to Plaintiffs' Requests. [DE 49-2]. Despite its production, Sirpilla maintained objections to several of the Requests without any direct statement that it was intentionally withholding any responsive documents due to those objections, as required by Fed. R. Civ. P. 34(b)(2)(C). [DE 49-2]. Therefore, Plaintiffs assumed that the 230 pages produced by Sirpilla constituted the entirety of the documents responsive to their Requests.

Litigation then continued over the following year, during which time Plaintiffs conducted depositions. Plaintiffs also retained an expert witness who inspected the RV and prepared an expert report using the information Sirpilla produced in February 2019. Additionally, the parties participated in an unsuccessful judicial settlement conference before the undersigned on January 21, 2020. [DE 33].

In the meantime, Plaintiffs filed a motion to compel on December 9, 2019, seeking complete responses to their December 2018 Interrogatories and Document Requests from both Defendants. On February 6, 2020, the undersigned held a hearing on the motion to compel. At the hearing, the issues presented in the motion were discussed. Additionally, Plaintiffs' counsel asked Defendants' counsel, for the first time and without having raised it in the motion to compel, for a list containing the names of mechanics in Sirpilla's service center and their corresponding technician codes ("the Code List"). Repair sheets produced by Sirpilla only included technician codes, not the names, of the relevant mechanics making the Code List necessary to identify the mechanics. While this issue had not been raised in the briefs, Defendants' counsel did not object to the request and readily agreed to produce the Code List. The undersigned memorialized the results of the hearing in an Order dated February 7, 2020, granting in part and denying part Plaintiffs' motion to compel. Notably, the February 2020 Order did not explicitly mention the Code List as it was not part of the pending motions considered at the hearing.

Throughout February 2020, several depositions were taken. The day before the Rule 30(b)(6) deposition of Sirpilla on February 20th, Plaintiffs' counsel requested that the designated witness bring along the original sales and repair files for the RV to be available for reference at the deposition and to be reviewed to confirm the accuracy of document production. Sirpilla refused to do so because Plaintiffs had not subpoenaed the files and defense counsel could not review the files for undiscoverable information before the deposition. The February 20th 30(b)(6) deposition proceeded without the

files. However, Sirpilla's designated Rule 30(b)(6) witness was not able to answer questions on all the topics Plaintiffs noticed. Therefore, the 30(b)(6) was continued to March 6, 2020, at Sirpilla's office in Akron, Ohio. On the same date, Plaintiffs served a Notice of Inspection on Sirpilla requiring production of the sales and repair files at the March 6th deposition.

On March 6, 2020, before the scheduled deposition, Sirpilla produced the sales and repair files for Plaintiffs' inspection. At the same time, Sirpilla produced a memory stick with photographs of the RV during repairs. Plaintiffs' counsel quickly realized that the files and memory stick contained documents and photographs ("the Disputed Materials") that had not been produced in February 2019 with Sirpilla's other discovery responses. Counsel then spent about 3-1/2 hours inspecting the files and the deposition was canceled.

During the inspection, Plaintiffs' counsel also inquired about the Code List. Defendants counsel advised that the designated 30(b)(6) witness, scheduled to be deposed after the document inspection, would bring the Code List. But then Plaintiffs' counsel canceled the deposition and the Code List was not produced that day. As of March 13, 2020, the Code List had yet to be produced by Defendants.[1]

---

[1] The record reflects minimal efforts by Plaintiffs, as the movants, to confer or attempt to confer in good faith with Defendants regarding the Code List before filing the instant sanctions motion under Rule 37. *See* Fed. R. Civ. P. 37(a)(1). Moreover, Plaintiffs did not file a separate certification, as part of their instant discovery-related sanctions motion, that they conferred or attempted to confer in good faith with Defendants. *See* N.D. Ind. L.R. 37-1(a). This procedural failure alone could justify denying their motion. *See* N.D. Ind. L.R. 37-1(b). However, the undersigned will consider the merits of Plaintiffs' motion rather than rely upon this procedural technicality. Nevertheless, Plaintiffs are **ADMONISHED** to comply fully with the Federal Rules of Civil Procedure and the Local Rules for the Northern District of Indiana going forward in this litigation. Additional procedural missteps could result in summary rulings or sanctions in the future.

Believing that the Disputed Materials were knowingly withheld from Sirpilla's original production in February 2019 and without having received the Code List, Plaintiffs filed the instant Sanctions Motion against Sirpilla on March 19, 2020.[2] On April 2, 2020, Sirpilla filed its response in opposition to Plaintiffs' Motion contending that its failure to disclose the Disputed Materials was inadvertent and that the Disputed Materials provide no meaningful new information that would impact or prejudice Plaintiffs. That same day, Sirpilla produced the Code List via email between counsel [DE 54-5] while arguing that the timing of its production did not violate the Court's Order. In reply, Plaintiffs disagree with Sirpilla's characterizations arguing that Sirpilla's delayed production prejudiced them by disrupting progress in this case and causing additional expense justifying sanctions in the form of default judgment.

## 2.    Legal Standard

When a party fails to disclose discovery as required under Fed. R. Civ. P. 34 or fails to obey a court order, the court has discretion to impose sanctions up to and including entry of default judgment.  Fed. R. Civ. P. 37(a)–(c).  The district court's authority to sanction also derives from its inherent power to manage its cases. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–47 (1991). District courts enjoy broad discretion in supervising discovery and that discretion extends to deciding whether and how to sanction discovery misconduct.  *Hunt v. DaVita, Inc.*, 680 F.3d 775, 780 (7th Cir. 2012). However, "[s]anctions . . . must be proportionate to the circumstances." *Donelson v.*

---

[2] Plaintiffs had filed a Motion for Sanctions against Sirpilla on March 13, 2020. [DE 47]. Upon the filing of the instant Amended Motion [DE 49], the Court denied the original motion as moot and referred the Amended Motion to the undersigned for a Report and Recommendation. [DE 50].

*Hardy*, 931 F.3d 565, 569 (7th Cir. 2019). Among the factors courts consider in any sanctions analysis are "the frequency and magnitude of the party's failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (internal quotations and citations omitted); *see also Donelson*, 931 F.3d at 569.

Default judgment is presumptively proportional "when there are willful or bad faith violations of discovery orders[,] a pattern of contumacious conduct[,] dilatory tactics[,] or the failure of less drastic sanctions." *Crown Life Ins. Co. v. Craig*, 995 F.2d 1376, 1383 (7th Cir. 1993). Fault, defined as "extraordinarily poor judgment" or "gross negligence" rather than "mistake or carelessness," can also support default judgment as a sanction. *Ramirez v. T&H Lemont Inc.*, 845 F.3d 772, 776 (7th Cir. 2016). Yet, courts only impose default judgment as a Rule 37 sanction in extreme situations where the offending party demonstrates willfulness, bad faith, or fault. *Rice*, 333 F.3d at 784 (quoting *GCIU Emp'r Ret. Fund v. Chi. Tribune Co.*, 8 F.3d 1195, 1199 (7th Cir. 1993); *see also Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000).

### a.    Failure to Disclose the Disputed Materials

Plaintiffs assert that several decisions[3] by Sirpilla during discovery constituted the willfulness, bad faith, or fault necessary to support a sanction of default judgment. Specifically, Plaintiffs claim that Sirpilla

---

[3] Plaintiffs characterize their examples of Sirpilla's alleged willfulness, bad faith, and fault as "decisions" but without any direct evidence of intent.

- intentionally withheld all relevant documents or photographs in its Rule 26(a)(1) initial disclosures,
- selectively withheld the relevant Disputed Materials from its February 2019 responses to Plaintiffs' December 2018 written discovery requests,
- failed to disclose materials being withheld from its February 2019 production contrary to Fed. R. Civ. P. 34(b)(2)(C),
- allowed fact and expert discovery based upon incomplete records,
- refused to allow inspection of the sales and repair files without a formal notice of inspection, and
- failed to produce a designated 30(b)(6) witness or witnesses who could speak to all the noticed topics in a single deposition.

[*See* DE 49 at 13–20]. Plaintiffs then suggest that Sirpilla's decisions prejudiced them by misleading them into thinking everything had been produced, which

- caused them to retain an expert who inspected the RV and prepared an expert report based on incomplete records,
- resulted in preparation of the December 2019 motion to compel based on incomplete records,
- allowed a judicial settlement conference to proceed based on an incomplete understanding of RV's repair history,
- will require additional time and expense to repeat depositions and expert witness discovery given the additional production, and
- wasted $42,0003 in attorney fees, $3,252.60 in paralegal time, and $28,342.27 in other costs of discovery since February 2019.

[*See* DE 49 at 13–20].

### i.   Initial Disclosures

Contrary to Plaintiffs' allegation, Sirpilla's decision not to produce any relevant documents or photographs with its joint initial disclosures with Forest River does not constitute willfulness, bad faith, and fault. Fed. R. Civ. P. 26(a)(1)(A)(ii) requires parties,

without awaiting a discovery request, provide to the other parties: . . . a copy—or a description by category and location—of all documents, electronically stored information [("ESI")], and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment . . . .

9

The Rule allows *either* provision of a copy of all documents, ESI, and tangible things in the disclosing party's possession, custody, or control *or* provision of "a description by category and location" of the same items. *Id.*

As Plaintiffs themselves demonstrated by attaching Defendants' Initial Disclosures to their Sanctions Motion, Defendants' initial disclosures include a list of information "maintained in the possession of Forest River or its counsel [that] may be relied upon in support of its claims." [DE 49-7 at 2–3]. That list explicitly named the "Sirpilla RV Sales file" and the "Sirpilla RV repair sheets" [DE 49-7 at 3], the exact information Plaintiffs now contend should have been produced in full at the time of the initial disclosures. Thus, Defendants—including Sirpilla— complied with Rule 26(a)(1)'s initial disclosure requirements by identifying the Sales file and repair sheets as categories of relevant information and indicating the location of that information as "in the possession of Forest River or its counsel." Such compliance does not, and cannot, create an inference of willfulness, bad faith, or fault let alone establish any such malintent outright.

### ii. February 2019 Written Discovery Responses

Similarly, Plaintiffs have not demonstrated willfulness, bad faith, or fault in Sirpilla's failure to include the Disputed Materials in their original written discovery responses in February 2019. In fact, the only evidence Plaintiffs put forward from which an inference could be made that Sirpilla knew or should have known that the Disputed Materials existed and should have been produced before the files were inspected on March 6, 2020, is the fact that the files at issue contained the documents Sirpilla

10

produced in February 2019 intermixed with the Disputed Materials. From this, Plaintiffs conclude that Sirpilla improperly and intentionally withheld the Disputed Materials from its February 2019 discovery responses without any other meaningful evidence to support a finding of willfulness, bad fault, or fault.

Furthermore, Plaintiffs have not produced any evidence to overcome Sirpilla's explanation for its delayed production of the Disputed Materials. Sirpilla does not explain how the Disputed Materials were overlooked initially but posits that because it works on thousands of RVs a year, has multiple employees within its service department, and a high volume of files, the failure to timely produce the Disputed Materials was an inadvertent and honest mistake. Even an honest mistake, however, could be sanctionable if it was the result of "extremely poor judgment" or "gross negligence." *Ramirez*, 845 F.3d at 776. The record here does not indicate that Sirpilla's conduct rises to that level.

Before the Court are affidavits from two Sirpilla employees, General Manager Todd Bleichrodt and Service Manager Paul Berlovan, who articulate how Sirpilla found and produced documents responsive to Plaintiffs' written discovery requests. [DE 54-13]. Bleichrodt explains that he personally gathered the sales file and instructed his assistant to scan the file into the computer. He then instructed Berlovan to gather the service files (or repair sheets) and send them to him. Upon receiving scanned versions of the sales and service files, Bleichrodt reviewed them and sent them to counsel. Importantly, Bleichrodt stated that documents were not included in the files in February 2019 because they had not been filed yet. According to Bleichrodt, Sirpilla's

standard filing procedure resulted in later discovered documents being inserted and organized in the file once discovered without any "intentional or malicious activity" to withhold responsive documents. [DE 54-13 at 1–2].

Berlovan confirms that he was instructed by Bleichrodt to gather the service files relating to Plaintiffs. Berlovan explains that in addition to gathering a hard copy of Plaintiffs' service file, he also looked for other documentation within the service department that would have related to Plaintiffs. Upon completing this search, he instructed his assistant to scan the materials, reviewed them, and sent them to Bleichrodt. Berlovan further states that Bleichrodt discussed with him the additional documents found in the service file on March 6, 2020, during the inspection. Berlovan reports that he produced a copy of the file as it existed when it was requested and that employees may have later added additional records that had been "misfiled, not yet filed, or misplaced" to the file without his knowledge. [DE 54-13 at 3–4].

Sirpilla's explanation of its processes for responding to Plaintiffs' written discovery requests is somewhat limited. Moreover, Sirpilla would probably benefit from more attentive strategies for discovering and supplementing their discovery responses, especially if files are regularly updated as Bleichrodt and Berlovan suggest. Yet the body of evidence Plaintiffs use in their attempt to undermine Sirpilla's narrative is even less persuasive.

Plaintiffs contend that the sheer number of nondisclosed documents at issue undermines Sirpilla's explanation that the Disputed Materials were inadvertently misfiled or overlooked. Plaintiffs also note that the Disputed Materials are dated prior

to Sirpilla's original production date of February 21, 2019, such that they had to be in Sirpilla's possession at the time of the original production. Plaintiffs raise reasonable questions but do not develop those issues sufficiently to even establish extremely poor judgment or gross negligence. *See Ramirez*, 845 F.3d at 776. In order to find either of these, there must be "objectively unreasonable behavior" on the part of Sirpilla. *See Long*, 213 F.3d at 987. Sirpilla's conduct on its face is not "objectively unreasonable." Future incidents in this case or other arguably could be found objectively unreasonable now that Sirpilla has been put on notice of their weak protocols for gathering, producing, and supplementing information responsive to discovery requests. But Sirpilla's suboptimal procedures do not make it implausible that the Disputed Materials were inadvertently omitted from the original production in February 2019 or subsequent supplementation under Fed. R. Civ. P. 26(e) before March 6, 2020.

Thus, without establishing willfulness, bad faith, fault, extremely poor judgment, or gross negligence, Plaintiffs did not meet their burden to support sanctioning Sirpilla's delayed production of the Disputed Materials.

### iii. Prejudice to Plaintiffs

While default judgment is not a justified sanction for Sirpilla's delayed production of the Disputed Materials, the question remains as to whether any sanction is warranted for Sirpilla's delayed production. Plaintiffs request an order for Sirpilla to pay their litigation costs and attorney fees incurred for all the depositions and expert witness work that occurred after February 21, 2019. However, even the lesser sanction of fees and expenses must be proportional to the harm suffered as the result of

discovery misconduct.  *See Donelson*, 931 F.3d at 569.  Thus, the Court must consider the

harm or prejudice to Plaintiffs from Sirpilla's delayed production of the Disputed

Materials before a proportional sanction can be identified.

In the instant Motion, Plaintiffs describe the information discovered in the

Disputed Materials as follows:

> Among the documents not produced were numerous handwritten notes,
> numerous handwritten parts orders by a witness already deposed (Victoria
> Billman), a handwritten note to employees saying "don't do anything,"
> handwritten repair lists, numerous RV inspections forms, hand written
> post-it notes comments, factory instructions to Sirpilla RV regarding floor
> repair work, detailed notes about the flooring problems, at least one repair
> order that had never been produced at all, a repair order where the dates of
> service did not match the copy of it previously produced, more undisclosed
> emails, checklists, and numerous Forest River documents that Forest River
> itself has never produced but which were apparently sent to Sirpilla RV
> during dealer's repair attempts.

[DE 49 at 8-9].  Plaintiffs then assert that, because of these new documents, nearly every

discovery event between February 21, 2019, and March 6, 2020, including depositions

and the expert witness report, will need to be redone or supplemented.  Yet absent from

Plaintiffs' Motion is any clear articulation as to why the newly discovered documents

would meaningfully change the content of the aforementioned depositions and expert

witness report.  Simply stating that such harm or prejudice was suffered is not enough;

there must be a specific articulation as to why the newly discovered information would

meaningfully impact the body of evidence in this case.  *See ArcelorMittal Ind. Harbor LLC*

*v. Amex Nooter, LLC*, 320 F.R.D. 455, 463 (N.D. Ind. 2017).

Moreover, based on an analysis of the materials produced belatedly, Sirpilla's

delayed production of the Disputed Materials was harmless and did not prejudice

Plaintiffs. Sirpilla contends in a chart in its response brief that many of the photographs discovered on March 6, 2020, were either identical or nearly identical to photographs produced earlier by co-defendant Forest River. [DE 54 at 6-7]. The Court's own review of over forty of the photographs identified in Sirpilla's chart confirms that the listed photographs were nearly identical and provided no new meaningful information.[4] Sirpilla similarly noted that many of the "new" sales and repair records were extremely similar to previously produced documents or were irrelevant to the issues in this case. [DE 54 at 8]. Upon its own review, the Court agrees with Sirpilla's assessment.

For the first time in their reply brief, however, Plaintiffs attempt to describe with greater particularity the harms they allegedly suffered as the result of Sirpilla's delayed disclosure. Plaintiffs identify "newly disclosed Sirpilla documents[5]" in their reply then summarize the content of what they call "the most important undisclosed documents" in an attached Exhibit entitled Major Issues in New Sirpilla Document Production [DE 59-2]. Still, though, Plaintiffs do not clearly articulate what new information in these documents changes the record so much as to necessitate the redoing of their expert

---

[4] After reviewing the entire list of photographs, there was only one instance in which the photographs Sirpilla claims to match did not match. Photograph 256 of Defendants' Initial Disclosures [DE 56-2 at 81] does not match Photograph 129 of the Disputed Materials [DE 54-10 at 129]. However, Photograph 256 of Defendants' Initial Disclosures does match Photograph 91 [DE 54-10 at 91] of the Disputed Materials. Therefore, it is most likely that this single inaccuracy was merely the result of a typographical error.

[5] According to Plaintiffs,

> [t]he newly disclosed Sirpilla documents include the dealer acceptance form noting damage and defects from the factory, presale repairs from May 25, 2017 and June 14, 2017, a July 10, 2017 repair order with approved labor time, typed and handwritten notes with instructions to Sirpilla on the RV's floor repair process, emails, transport documents, and a handwritten note with the instruction to "wait to discuss with Paul" and to "not do anything until he sees the work order.

[DE 59 at 6].

witness report, or the re-questioning of witnesses through new depositions. The Court will not scour the record to locate additional evidence supporting Plaintiffs' arguments or attempt to find a "smoking gun"—which Plaintiffs have not identified—within the hundreds of pages produced in the parties' briefs. The Court is not, as the Seventh Circuit states, either "pigs hunting for truffles buried in briefs" or "archaeologists" searching the record to locate supporting evidence for one party or the other. *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991); *DeSilva v. DiLeonardi,* 181 F.3d 865, 867 (7th Cir. 1999). Thus, even after considering the new information Plaintiffs appear to be concerned about, the Court finds that Plaintiffs have not sufficiently developed the record to support an award of fees and expenses as a sanction for Sirpilla's delayed disclosure of the Disputed Materials more proportional than default judgment.

**b.    Untimely Production of the Code List**

Plaintiffs also ask the Court to sanction Sirpilla with default judgment and an award of litigation costs and attorney fees for failing to comply with the Court's February 2020 Order by delaying production of the Code List. As a preliminary matter, the Court did not adjudicate the issue of the Code List at the February 2020 hearing or in the subsequent Order. The Code List was not raised in the motion to compel then before the Court. Rather, at the hearing, Plaintiffs' counsel sought and received oral agreement from Defendants' counsel to produce the Code List. With no dispute to resolve, the Court did not need to address the Code List in its Order. Consequently, Sirpilla's delayed production of the Code List cannot be construed as failure to comply with a Court order under Fed. R. Civ. P. 37(b).

16

Moreover, Plaintiffs have once again failed to establish the willfulness, bad faith, or fault necessary to justify default judgment or any other sanction against Sirpilla for its slow production of the Code List. *See Long*, 213 F.3d at 986. Under Fed. R. Civ. P. 1, the parties and this Court are obligated to "to secure the just, speedy, and inexpensive determination of [this] action." Accordingly, Sirpilla should have produced the Code List promptly after promising to do so at the February 2020 hearing. Sirpilla's explanation for the delay is, however, reasonable considering extenuating circumstances.

First, Attorneys Georgianne Walker and Katlyn Hunneshagen represent both Defendants in this action. Attorney Hunneshagen handled discovery matters but was unable to attend the discovery-related hearing in February because she was hospitalized. Upon her return, Attorney Hunneshagen resumed responsibility for discovery but Attorney Walker's oral representation to Plaintiffs' counsel at the hearing was inadvertently overlooked, perhaps because it was not addressed specifically in the Court's subsequent Order.  Counsel's collective failure to promptly honor Attorney Walker's oral representation was clearly a mistake, but understandable given the circumstances. Therefore, their mistake did not rise to the level of "extraordinarily poor judgment" or "gross negligence." *See Ramirez*, 845 F.3d at 776.

Second, Sirpilla's second representation that it would produce the Code List was also plagued by unusual circumstances. On March 6, 2020, while inspecting the sales file and repair records discussed above, Plaintiffs' counsel inquired about production of the Code List. Sirpilla represented that its Rule 30(b)(6) designated witness would

produce the Code List at his deposition immediately following the inspection. Then, Plaintiffs' counsel canceled the deposition without inquiring about the Code List again. Instead, Plaintiffs filed the instant Sanctions Motion bringing its concern over the Code List to the Court without showing good faith effort to resolve the production issue after the unforeseen cancelation of the March 6th deposition[6]. *See* Fed. R. Civ. P. 37(a)(1). Yet Sirpilla was prepared to produce the Code List at the March 6th deposition and was only deterred by an unexpected turn of events—Plaintiffs' discovery of the Disputed Materials during the pre-deposition inspection and their cancelation of the deposition. Thus, Sirpilla's failure to produce the Code List following its March 6th representation does not amount to "extraordinarily poor judgment" or "gross negligence."

Furthermore, Sirpilla ultimately produced the Code List on April 2, 2020. Therefore, any harm or prejudice Plaintiffs' suffered related to the Code List was minimal and has been adequately cured making any sanction disproportional to Plaintiffs' harm.

Overall, Plaintiffs try to paint a picture of willfulness, bad faith, and fault by Sirpilla in discovery that does not exist. Sirpilla appropriately concedes that its disclosures have not gone as smoothly as they should have. Sirpilla admits that the Disputed Materials were not timely disclosed. Sirpilla acknowledges that Plaintiffs' oral

---

[6] Plaintiffs also failed to file a separate certification that they conferred or attempted to confer in good faith with Defendants before filing their discovery-related sanctions motion. *See* N.D. Ind. L.R. 37-1(a). This procedural failure alone could justify denying their motion. *See* N.D. Ind. L.R. 37-1(b). With a preference for resolving matters on the merits rather than on procedural technicalities, the undersigned will consider the merits of Plaintiffs' motion this time. However, Plaintiffs are **ADMONISHED** to comply fully with the Federal Rules of Civil Procedure and the Local Rules for the Northern District of Indiana going forward. Additional procedural missteps could result in summary rulings or sanctions.

request for the Code List got lost in the shuffle of unexpected circumstances more than once. Yet Plaintiffs have not articulated clearly the scope of the harms they may have suffered from Sirpilla's delayed disclosures of the Disputed Materials and the Code List or the scope of additional discovery required to address the recent disclosures. The record also brings into question if meaningful harm could arise from the delayed disclosures given the duplication of information between Sirpilla's original document production and the Disputed Materials and the relatively prompt production of the Code List in early April given the parties' busy deposition schedule and unanticipated litigation concerns after the February 2020 hearing. Lacking persuasive evidence of willfulness, bad faith, or fault in Sirpilla's conduct, the undersigned recommends that the Court deny Plaintiffs' Motion for Sanctions against Sirpilla.

### C.    Amended Motion for Sanctions Against Forest River [DE 52]

#### 1.    Relevant Background

Also pending before the Court is Plaintiffs' Amended Motion for Sanctions based on allegations that Forest River failed to comply with the Court's February 2020 Order [DE 39]. The Court's Order was issued in response to Plaintiffs' December 2019 motion to compel production of information related to all alleged defects of Plaintiffs' RV, specifically whether those defects were present in any other 2017 Dynamax DX3 RVs manufactured by Forest River. The Court determined that Plaintiffs' request was disproportionate to the needs of the case as stated and required Plaintiffs to identify the five most significant defects that would affect the valuation of Plaintiffs' RV. In turn, Forest River was ordered to produce information related to the five identified defects.

After communications back and forth between the parties working to identify and clarify the five defects, as ordered by the Court, Plaintiffs filed their initial Motion for Sanctions against Forest River on March 13, 2020, claiming that Forest River's actions in responding to the Court's Order had been "extremely dilatory and sanctionable." [DE 48 at 3]. On March 23, 2020, Forest River produced some relevant information but informed Plaintiffs that it needed more information to produce further responsive information. The next day, on March 24, 2020, Plaintiffs provided more details regarding the remaining issues and notified Forest River that they did not find the information produced to date fully responsive. Forest River responded by email the same day, indicating that it would work to supplement its production to be fully responsive to Plaintiffs' requests, but noted that production may be delayed, because some key Forest River employees were not working due to the COVID-19 pandemic.

Two days later, on March 26, 2020, Plaintiffs filed the instant Amended Motion for Sanctions in which they acknowledge that "Forest River has provided some information about the 5 defect repair types [and that] Plaintiffs' counsel understands from defendant Forest River's counsel that the requested documents are being researched and/or obtained and will be produced." [DE 52 at 3-4]. Nonetheless, Plaintiffs reassert that Forest River's conduct was "extremely dilatory and sanctionable" and request imposition of the severe sanction of default judgment on liability against Forest River and an award of fees and costs related to the Amended Motion.

As has been discussed previously, the sanction of default judgment is reserved for the most egregious of cases, where the offending party has demonstrated

willfulness, bad faith, or fault and the moving party has been prejudiced by the

offending party's action. *See Donelson*, 931 F.3d at 569; *Long*, 213 F. 3d at 986. Plaintiffs'

additional requested sanction, attorney fees and costs related to the filing of their

motion, must only be granted if such a sanction is proportionate to the harm suffered by

Plaintiffs by Forest River's actions. *Donelson*, 931 F.3d at 569.

Here, Plaintiffs assert that sanctions are warranted because Forest River allegedly

violated the Court's February 2020 Order. The Order stated, in relevant part:

> Plaintiffs shall identify the five most significant defects that would affect
> valuation of their 2017 Dynamax DX3 and reframe their request so as to
> limit Forest River's production to information related to those five defects
> for all other 2017 Dynamax DX3s. Forest River shall, however, disclose the
> number of 2017 Dynamax DX3s produced (FR ROG 12) and identify any
> recalls arising from the defects alleged by Plaintiffs to provide necessary
> context to the information tailored to the five significant defects to be
> identified by Plaintiffs.

[DE 39 at 5]. Notably, the Court's Order required action from both parties but did not

provide a specific deadline for that action beyond the overall discovery deadline of

March 15, 2020. [DE 39 at 5, 7]. Plaintiffs were obligated to identify the defects and

Forest River was directed to provide information relating to those defects once they

were adequately identified.

On February 21, 2020, Plaintiffs made their first attempt to identify the defects

via email[7]. [DE 52-1]. On March 4, 2020, Forest River responded by email indicating that

---

[7] Plaintiffs identified their five chosen issues as:
     One. The slide out
     Two. The air conditioners not blowing cold are adequately
     Three. The slide out Aluminum trim and wall having pulled away from the adjoining
     wall
     Four. The floor problem

it needed further explanation and clarification in order to be able to effectively provide information relating to the defects. Plaintiffs responded the same day and identified specific repair order numbers that gave Forest River guidance as to which defects were chosen. Waiting only nine days for a response, Plaintiffs filed the first iteration of their Motion for Sanctions against Forest River on March 13, 2020—two days before the overall discovery deadline. [DE 48]. Despite receiving a partial response from Forest River with assurances of supplemental production after additional research, Plaintiffs filed the instant Amended Motion on March 26, 2020. Plaintiffs acknowledge Forest River's efforts in their Amended Motion as follows:

> Since its receipt of the Plaintiffs' sanction motion, defendant Forest River has provided some information about the 5 defect repair types but has not provided its warranty repair records or the repair order records which would list the actual owner complaints. Presently, Plaintiffs' counsel understands from defendant Forest River's counsel that the requested documents are being researched and/or obtained and will be produced.

[DE 52 at 3-4]. While the parties may have disagreed about the scope of information Forest River is required to produce under the Court's February 2020 Order, Forest River has clearly shown a willingness to cooperate with Plaintiffs to comply with the Court's Order. Furthermore, the record shows that even as Plaintiffs filed their sanctions motions, such cooperation was still ongoing.

In light of its ongoing cooperation, Forest River has not demonstrated willfulness, bad faith, or fault in its responsiveness to the Court's Order. *Long*, 213 F. 3d

---

Five. Aqua hot system
[DE 52-1 at 1mlfml]

at 986.  Additionally, Plaintiffs have not shown that they have been prejudiced or harmed by Forest River's actions.  *Donelson*, 931 F.3d at 569.  In fact, Plaintiffs have acknowledged Forest River's compliance, without waiving any objection to the completeness of Forest River's production.  As a result, Forest River has not violated the Court's Order and Plaintiffs' Motion for Sanctions against Forest River was filed prematurely, before Forest River was given a reasonable time to respond to the parties' ongoing communications regarding production pursuant to the Court's Order.  Forest River's actions were not "extremely dilatory" as Plaintiffs assert or wrongful in any way at all.  Therefore, the undersigned recommends that the Court deny Plaintiffs' Motion for Sanctions against Forest River.

## III.  CONCLUSION

Plaintiffs have failed to articulate why the extraordinary relief of default judgment is justified against Sirpilla or Forest River in their sanctions motions. Plaintiffs failed to show that the requested sanctions are proportionate to the prejudice or harm they may have suffered from Defendants' discovery conduct.  Moreover, Plaintiffs have not shown willfulness, bad faith, or fault on the part of either Defendant. Frankly, Plaintiffs have demonstrated conduct closer to bad faith themselves by filing sanctions motions that seek disproportionate sanctions. Plaintiffs' time would have been more productively spent working with Defendants to resolving these discovery matters or drafting more targeted, reasonable motions if any legitimate impasse arose.

For these reasons, the undersigned **RECOMMENDS** that the Court **DENY**

Defendants' Motion to Strike [DE 61]; **DENY** Plaintiffs' Motion for Sanctions against

Sirpilla [DE 49]; and **DENY** Plaintiffs' Motion for Sanctions against Forest River [DE 52].

**NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

**SO ORDERED** this 7th day of October, 2020.


s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge