UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MELINDA LITSINGER, *et al.*,

Plaintiffs,

v.

FOREST RIVER, INC., *et al.*,

Defendants.

CAUSE NO. 3:18-CV-613 DRL-MGG

OPINION & ORDER

    This should be a simple warranty case. Melinda and James Litsinger dislike the 2017 Forest River Dynamax they bought from an Ohio dealer. They discovered several defects—some fairly minor, some more worrying. They asked for warranty service. Both the dealer (Sirpilla) and the manufacturer (Forest River) worked on the unit. The Litsingers claim the repair attempts were unsuccessful. They sue for warranty breaches and for representations they say were deceptive.

    Thereafter clarity suffers. Briefing is a jabberwackious read.[1] The court wants badly to heed the apparent warning but into the looking glass it goes—soon realizing that the world that has been created is at times maddening. Only months of work bring this case back from Wonderland to the law in Indiana and Ohio. The sheer time devoted to this one case to unentangle the prolix maze of arguments, at times fluctuating, duplicative, late, and immaterial, and to steady the shifting sands of mutable facts, has merely delayed ruling and detracted from the court's consideration of hundreds of matters. The parties are innocent bystanders—they deserve and have received full deliberate

---

[1] "'Twas brillig, and the slithy toves, Did gyre and gimble in the wabe: All mimsy were the borogoves, And the mome raths outgrabe. "Beware the Jabberwock, my son!" Alice later says, "It seems very pretty but it's rather hard to understand! Somehow it seems to fill my head with ideas—only I don't exactly know what they are! However, somebody killed something: that's clear, at any rate." Lewis Carroll, *Through the Looking-Glass* (1871).

consideration—but these experienced lawyers know better. Forgive the court its uncharacteristic commentary. But be forewarned: the next case won't be presented this way without consequence.

At the end of this journey, only one claim remains triable before a jury: the claim that Sirpilla, the recreational vehicle dealer, violated Ohio's Consumer Sales Practices Act, specifically Ohio Revised Code §§ 1345.02(B)(1), (B)(2) and Ohio Administrative Code § 109:4-3-16. The court grants summary judgment on the remainder.

BACKGROUND

In 2017, Melinda and James Litsinger purchased a 2017 Forest River Dynamax DX3 RV from Sirpilla RV Centers, LLC. They had been in for service on another recreational vehicle on June 13 when they decided to walk the lot with a salesman. They saw this Dynamax unit and decided to purchase it after a test drive. They eventually paid $314,374.65.

That same day, the Litsingers inspected the RV with Sirpilla and noticed certain items that needed fixing, including a button pad on the outside door, the seals on the driver and passenger vent windows, and an inoperable dinette slide. Sirpilla said it would fix these items and they would have no more issues. The Litsingers made an $80,000 deposit.

Three days later, they returned to finalize the deal. They signed a purchase agreement. The manufacturer, Forest River, Inc., provided an express warranty on the unit for two years or 24,000 miles. The purchase agreement between the Litsingers and Sirpilla explained that the dealer was not providing any warranty. It also said any claims arising out of the contract or unit's purchase would need to be brought within one year from the sale.

On delivery, the Litsingers noticed that the button pad and window seals had not yet been fixed, though the dinette slide had. Sirpilla explained that it would open a work order on these two issues and fix them within a couple weeks. Shortly thereafter, during a trip to a local state park, the Litsingers lost power to half the RV. Sirpilla was booked for three months, so the Litsingers hired a

mobile technician only to discover that the issue was merely a blown fuse. Forest River declined to cover this expense.

Then began a series of service visits at Sirpilla for various defects that the Litsingers identified—one visit on July 9, 2017 for what the Litsingers say were 18 defects; one visit on September 22, 2017 for what the Litsingers say were 5 defects; another visit on October 18, 2017 for what the Litsingers say were 8 defects; and one on December 5, 2017 for what the Litsingers reported were 17 defects. On the last visit, the Litsingers told Sirpilla they would not need the RV until March 2018. The Litsingers requested that Sirpilla take and winterize the unit. Sirpilla performed work on each of these occasions, though the Litsingers claim that not all items were fixed.

Apparently without the Litsingers knowing, Forest River picked up the RV from the dealer in Ohio and transported it to the manufacturer's facility in Indiana on January 31, 2018. After working on nearly two dozen issues, Forest River returned the unit to Sirpilla on March 8, 2018. That day, the Litsingers say they saw Forest River had damaged the RV's paint in many areas and reported 24 more defects. The unit remained out of service until May 25, 2018.

On April 2, 2018, now represented by counsel, the Litsingers sent a letter to Forest River asking it to cure what they viewed as warranty breaches and unfair or deceptive acts. The parties agreed to an inspection on May 25, 2018. When the Litsingers arrived that morning, they observed Sirpilla technicians working on the unit, though their counsel had sent the dealer a litigation hold letter the afternoon before. The Litsingers retrieved the RV, inspected the unit, and made a list of unrepaired or new defects. There were nine, they say.

The Litsingers provide a chart that attempts to summarize 45 defects—at times not always accurate—that had been presented for repair over the course of 248 days in service—though also not always days attributable to warrantable service. They say these 45 defects over 248 days of work create triable issues on whether Forest River breached its warranty.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in her favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The court must deny a summary judgment motion when there is admissible evidence that creates a genuine issue of material fact—a triable issue. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

The court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp./Nichols-Homeshield*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

DISCUSSION

A.    *Sirpilla's Summary Judgment Motion.*

1.    *The Court Applies Federal Procedural Law, Indiana's Statute of Limitations, and Ohio's Substantive Law to Claims Against Sirpilla.*

Under the *Erie* doctrine, a federal court that hears a state law claim through supplemental jurisdiction must apply state "substantive" law and federal "procedural" law, *Felder v. Casey*, 487 U.S. 131, 151 (1988); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014); *Houben v. Telular Corp.*, 309 F.3d 1028, 1032 (7th Cir. 2002), though that distinction has never been considered one so simple, *see Gasperini v. Ctr. for Humanities*, 518 U.S. 415, 427 (1996); *Hanna v. Plumer*, 380 U.S. 460, 471 (1965).

4

A federal procedural law "is one motivated by a desire to reduce the cost or increase the accuracy of the litigation process, regardless of the substantive basis of the particular litigation." *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 302 (7th Cir. 2010). The court must apply federal procedural rules, those found in the Federal Rules of Civil Procedure, unless "the Advisory Committee, [the Supreme] Court, and Congress erred in their prima facie judgment that the Rule in question transgresses neither the terms of the Enabling Act nor constitutional restrictions." *Hanna*, 380 U.S. at 471; *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 346 (7th Cir. 1997). Though it will seem odd to say this at the summary judgment stage, thus more on this later, no court has found the federal pleading rules to violate the terms of the Enabling Act or the Constitution, so the court applies them. *See, e.g.*, *Jessen v. Aetna Life Ins. Co.*, 209 F.2d 453, 458 (7th Cir. 1954) (stating that federal court must follow Fed. R. Civ. P. 8).

Turning to which state law to apply as the rule of decision, Indiana or Ohio, federal law deems both statutes of limitations and choice-of-law rules as "substantive" no matter whether a state might characterize them differently. *See Jinks v. Richland County*, 538 U.S. 456, 464-65 (2003); *Jacobs v. Thor Motor Coach*, 474 F. Supp.3d 987, 992 (N.D. Ind. 2020) (Leichty, J.). Thus, statutes of limitations, and any rules that are an "integral part of the statute of limitations," are part of the forum state's substantive law. *Hollander v. Brown*, 457 F.3d 688, 694 (7th Cir. 2006); *see also Walker v. Armco Steel Corp.*, 446 U.S. 740, 752-53 (1980).

"Substantive law also includes a state's rules on conflicts of law—which state law applies to a dispute." *Jacobs*, 474 F. Supp.3d at 992. A federal court "does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)); *accord Jacobs*, 474 F. Supp.3d at 992. The court must consequently apply Indiana's choice-of-law rules to determine which state law applies here—Indiana or Ohio.

States retain the right to adopt the choice-of-law rules they want without denying full faith and credit to any foreign substantive right. *See Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 516 (1953). Indiana has chosen to view its statute of limitations as a procedural constraint on when a suit may be filed, *see Kissel v. Rosenbaum*, 579 N.E.2d 1322, 1326-27 (Ind. Ct. App. 1991); *Jacobs*, 474 F. Supp.3d at 992, so "the law of the forum state where the suit is filed" governs the statute of limitations under Indiana's choice-of-law rules, *see Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1157-58 (Ind. Ct. App. 2010). That is to say Indiana law governs the statute of limitations here, not Ohio law as the parties both argue. *See Jacobs*, 474 F. Supp.3d at 993; *see also Shearer v. Thor Motor Coach*, 470 F. Supp.3d 874, 879 (N.D. Ind. 2020) (Simon, J.).

Indiana's choice endures even though the parties contractually agreed to apply the substantive law of another state. The contractual choice here speaks only to the substantive law that applies to claims. *See Smither*, 919 N.E.2d at 1157-58; *see also Allen v. Great Am. Reserve Ins. Co.*, 766 N.E.2d 1157, 1162 (Ind. 2002) (cited by Sirpilla but applying contractual choice of law only to substantive claim, not procedural issue under Indiana law). The contract leaves Indiana's statute of limitations (a procedural bar under state law) undisturbed because the parties included in their contract neither a stipulation that another state's statute of limitations would govern nor a proviso otherwise dispensing with conflicts of law. *See Smither*, 919 N.E.2d at 1157-58; *see also Morrison v. Vasquez*, 124 N.E.3d 1217, 1222 (Ind. 2019) (discussing distinction between procedural and substantive law). The sales agreement says Ohio law governs any claim "arising out of or relating to" the contract, language that will broadly capture most claims in the usual case and certainly all claims against Sirpilla here, *see Acad. of Med. v. Aetna Health, Inc.*, 842 N.E.2d 488, 492-93 (Ohio 2006) (calling this "the paradigm of a broad clause"), but it curiously omits the often-standard language "without regard to conflicts of law." Accordingly, though Ohio law supplies the substantive rules of decision for the various claims, Indiana's statute of limitations applies to determine a claim's timeliness vis-à-vis Sirpilla.

The court is faced with a scenario in which the parties seem to analyze the case mistakenly under different state law—that is, under Ohio's statute of limitations. One might presume that just as easily as parties may contractually agree to their choice of law, they may agree *post hoc* in litigation to apply a particular state's law to their dispute, but they can't. *See Bernstein v. Bankert*, 733 F.3d 190, 218 n.18 (7th Cir. 2012) (quoting *App v. Cass*, 75 N.E.2d 543, 547 (Ind. 1947) ("There is no question that the parties cannot agree upon the law and force a conclusion according to their understanding or agreement.")). The selection of the statute of limitations is a question of law, not an option for agreement in litigation. *See id.* Accordingly, the court applies Indiana's statute of limitations here. Indiana permits parties to reduce the statute of limitations for UCC-based claims, *see* Ind. Code § 26-1-2-725(1), and perhaps more, but that presumes the defense was preserved.

2.      *Sirpilla Forfeited and Waived a Statute of Limitations Defense.*

Sirpilla's sales contract includes a provision that limits the time that the Litsingers can bring claims relating to the RV's sale to one year from the sale date. Sirpilla contends that one year is a reasonable period of time and that this limitations provision is valid. Based on this statute of limitations, Sirpilla argues that all claims are untimely. The Litsingers say Sirpilla waived this defense by failing to plead the statute of limitations in its answer and affirmative defenses and that its claim under the Ohio Consumer Sales Practices Act (OCSPA) is nevertheless timely.

Waiver and forfeiture are governed by federal law here.[2] *See Venters v. City of Delphi,* 123 F.3d 956, 969 (7th Cir. 1997) (barring statute of limitations defense when raised in summary judgment reply and when defense never filed a motion to amend); *see also Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 478 (7th Cir. 2019) (noting difference between waiver and forfeiture). They are procedural concerns. Rule 8 says "a party must affirmatively state any . . . affirmative defense, including . . . statute

---

[2] The Litsingers vacillate from citing Ohio's statute of limitations then to citing Indiana state cases on waiver, with no explanation for this pivot. In truth, neither state's law governs waiver or forfeiture.

of limitations." Fed. R. Civ. P. 8(c)(1). The burden of pleading this defense rests on the defendant. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "A defendant's failure to plead an affirmative defense may result in the waiver of the defense if the defendant has relinquished it knowingly and intelligently, or forfeiture if the defendant merely failed to preserve the defense by pleading it." *Reed*, 915 F.3d at 478. The Litsingers use the term waiver, though their argument seems to sound more in forfeiture.

"The purpose of the pleading requirement for an affirmative defense is to avoid surprise and undue prejudice to the plaintiff by providing her notice and the opportunity to demonstrate why the defense should not prevail." *Id.* at 478 (quotation omitted). "Late assertions of affirmative defenses . . . make litigation more costly and difficult and can make it unfairly difficult for a plaintiff to pursue her claims." *Id.* at 479. Although a district court may allow a late affirmative defense, such an allowance is appropriate only when the tardy submission does not prejudice the plaintiff or result in unfair surprise. *Burton v. Ghosh*, 961 F.3d 960, 965 (7th Cir. 2020). By prejudice, the court doesn't mean that Sirpilla will win and the Litsingers will lose. *See id.* at 966. It must be unfair prejudice or surprise; and asserting a defense at summary judgment for the first time—after the prejudicial expense and duration of discovery in a case of this ilk, based on information always within the defendant's control, and without seeking leave to amend—fits the bill. *See Reed*, 915 F.3d at 479-82.

There was a simple answer here: file a motion to amend and invite the liberal allowance under Rule 15; force the other side to argue that the timing was prejudicial or the amendment futile. At no time has Sirpilla sought to amend its answer and affirmative defenses—even now and even after oral argument on these motions. *See Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 393 (7th Cir. 2000) (permitting amendment at summary judgment stage only after motion to amend). The limitations defense may not have been evident based only on the August 2018 complaint because the pleading omitted the sales agreement giving rise to its contract and warranty claims, and of course attaching the agreement wasn't required by federal rule (unlike some state rules). *See, e.g.,* 5 Charles Alan Wright &

Arthur R. Miller, *Federal Practice & Procedure* § 1235 (3d. ed. 2004 & Supp. 2020). The "narrow and pragmatic exception" to waiver or forfeiture when a defense proves apparent from the complaint, effectively pleading oneself out of court, thus has no bearing here. *See, e.g., Muhammad v. Oliver*, 547 F.3d 874, 878 (7th Cir. 2008); 5B Wright & Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004 & Supp. 2020).

That said, the complaint identified a purchase agreement by name and by date. Thus being on notice, at some point, whether at the pleading stage, or at least in initial due diligence or discovery as Sirpilla reviewed its own sales agreement, and not just when preparing for summary judgment briefing two years into the case, Sirpilla became aware of its right to this limitations defense. Its obligation to amend manifested then. This wasn't a defense hidden in boxes of documents of a complex case. Sales contracts and warranties often contain a provision reducing the time to commence suit. That is rather standard-issue, and a first step in reviewing any such contract. Sirpilla's own document—a mere two-page agreement—was enough to trigger the obligation to plead the statute of limitations as a defense, or seek to amend its pleading to do so, particularly when the sale date and the complaint's date were more than a year apart. Awaiting summary judgment to do so, without ever requesting an amendment under Rule 15, wasn't appropriate. *See Reed*, 915 F.3d at 479-80.

Sirpilla argues that it otherwise preserved the statute of limitations defense by pleading defenses of waiver, estoppel, and laches. Not even close, and close counts in the law far less than it counts in baseball—which is to say, it doesn't.[3] Rule 8 lists these defenses separately from a statute of limitations defense. Fed. R. Civ. P. 8(c)(1). The rule does so for good reason. The law substantively defines them differently, even if one (laches) has a timing component to it. *See, e.g., Richmond State Hosp. v. Brattain*, 961 N.E.2d 1010, 1012 (Ind. 2012) ("Independent[] of any statute of limitation, courts of

---

[3] In the immortal words of Frank Robinson, "Close don't count in baseball. Close only counts in horseshoes and hand grenades."

equity uniformly decline to assist a person who has slept upon his rights and shows no excuse for his laches in asserting them.").

The company's fallback argument proves even a greater stretch. Sirpilla claims that its contractual provision isn't really a "statute of limitations" at all as much as a contractual "nullification" of the claim such that the dealer never needed to plead the statute of limitations as a defense. That's some fancy footwork in another direction after the dealer argued in its opening brief that the parties agreed to a "one-year statute of limitations." A reply brief is no place for an about-face.

Nor is it a good one. Sirpilla cites to *Conte v. Blossom Homes LLC*, 63 N.E.3d 1245 (Ohio Ct. App. 2016), itself based on *Executive Plaza, LLC v. Peerless Ins. Co.*, 5 N.E.3d 989 (N.Y. 2014), but these cases merely prohibit a reduction of the statute of limitations when the accrual date (when that period would begin to run) prevents filing of a suit within the statute of limitations altogether. Such a "limitations period" then isn't really a limitations period at all, but a nullification of the claim because it forecloses a lawsuit, not limits the time within which to file one. Far from being a rule of law, as Sirpilla offers it to the court, the cases explain that such a provision (or interpretation of a provision) is contrary to law. *See Executive Plaza*, 5 N.E.3d at 991-92. A contract can reasonably reduce the time period to file a claim; it cannot eliminate it. Why Sirpilla thinks it wise to argue now that its provision is contrary to law is quite puzzling, but the argument doesn't help avoid a conclusion that the company waived or forfeited its timing defense here.

An additional concern exists here too. Sirpilla argues that the statute of limitations bars all claims, not just the UCC-based claims. That is a position of some surprise. For one, Sirpilla argues only Ohio law to advance its untimeliness argument; but, had it asserted its defense in its answer or in an amended pleading, the parties would have been better prepared to argue the actual operative law for this question, perhaps even have conferred in the course of discovery and before motions practice (and perhaps lending to a swifter ruling if motions practice proved unavoidable). Even at the close of

summary judgment briefing, Sirpilla's argument remains undeveloped, based as it is on the wrong law. *See Venters,* 123 F.3d at 968-9 (barring statute of limitations defense even when developed in summary judgment reply); *see also Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) (quoting *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002)) ("not this court's responsibility to research and construct the parties' arguments"). To be sure, conflict of laws questions are often complex and difficult, but that is all the more reason to advance these discussions earlier in the case.

As well, Sirpilla argues that the statute of limitations bars all claims—contract and tort alike. That argument is no surprise when it comes to the warranty-based claims, under either Indiana or Ohio law, *see* Ind. Code § 26-1-2-725(1) (granting permission to reduce limitations period to one year in an "action for breach of any contract for sale"), Ohio Rev. Code § 1302.98 (same), but the Litsingers effectively concede their warranty claims anyway.

The greater surprise comes in Sirpilla's attempt to use this contract-based defense to knock out a tort-based claim. The Litsingers argue that their OCSPA claim sounds in tort such that the contractual statute of limitations shouldn't apply to it.[4] *See, e.g., Butler v. Sterling, Inc.*, 2000 U.S. App. LEXIS 6419, 13 (6th Cir. Mar. 31, 2000) (calling OCSPA claim "a type of tort"). That position may be wrong; but once again, the parties argue Ohio law without addressing whether Indiana law should apply because this issue concerns the reduction of Indiana's statute of limitations, or whether Ohio law should apply because it concerns interpretation of a contract provision governed by Ohio substantive law. The chosen battle lines are the result of Sirpilla's late framing of the issue. Without deciding the issue, or even whether a conflict of laws exists, the court will only say this point underscores the unfair surprise and prejudice of awaiting summary judgment to assert a defense

---

[4] The Litsingers cite an Ohio case in which a contractual statute of limitations didn't apply to a bodily injury claim, *see Miller v. Progressive Cas. Ins. Co.*, 635 N.E.2d 317, 321 (Ohio Ct. App. 1994), but that is a common result. It isn't a common result when the damages are purely economic, as here. Still, the point is that Sirpilla advances an expansive reading of this contractual statute of limitations—one that governs by its own language only claims that arise from the contract or unit's purchase—to a tort-like theory.

reasonably known (or knowable) to the company two years ago. On this record, the defense was forfeited, and reasonably waived.

3.      *The Court Grants Summary Judgment on All OCSPA Theories, Except under Ohio Revised Code §§ 1345.02(B)(1), (B)(2) and Ohio Administrative Code § 109:4-3-16.*

What's good for the goose is good for the gander: the Litsingers cannot amend their pleading through their summary judgment argument either. *See Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996). The Litsingers contend that Sirpilla violated the OCSPA. Sirpilla argues that the Litsingers failed to plead this fraud-based claim with particularity and that the Litsingers cannot amend their pleading now, particularly to pursue certain violations of the OCSPA.

To the extent that Sirpilla seeks to challenge the complaint's sufficiency alone—whether this tort-based claim has been pleaded with particularity under Federal Rule of Civil Procedure 9(b)—that opportunity has come and gone. *See Bordoni v. Forest River*, 2020 U.S. Dist. LEXIS 63919, 9-10 (N.D. Ind. April 10, 2020) (Miller, J.) (argument on summary judgment that a fraud claim was not pleaded with particularity was untimely). This argument is untimely.

The court reads Sirpilla's argument as broader than just this point, however. Sirpilla argues that the Litsingers cannot now expand their OCSPA claims on summary judgment, and on that point the dealer is right—at least when the new theory rests on new factual bases, or represents a new legal claim that would now have detrimental consequences on the case's proper administration. *See, e.g., Shanahan*, 82 F.3d at 781 ("plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment"); *see also Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808-09 (7th Cir. 2014) (discussing when pleading is being amended through summary judgment briefing and when it is not). At no time have the Litsingers sought an amendment under Rule 15.

Generally, a plaintiff may not amend his complaint through arguments in summary judgment briefs. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012). When a plaintiff raises a new claim at summary judgment, the court must first consider "whether [the new claim] changes the complaint's

factual theory, or just the legal theories plaintiff has pursued so far." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017). If the new claim changes the complaint's factual theories, the court may construe it as an impermissible attempt to alter the complaint. *See id.* at 859; *Whitaker*, 772 F.3d at 808. On the other hand, if the new claim adds another legal theory based on facts already alleged in the complaint, the court should allow it to proceed "unless the changes unfairly harm the defendant or the case's development—for example, by making it more costly or difficult to defend the case, or by causing unreasonable delay." *Chessie Logistics*, 867 F.3d at 859 (quoting *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996)) (quotations omitted). This protocol prevents unfair surprise and prejudice at a late stage in the proceeding. *See Whitaker*, 772 F.3d at 809; *see also* Fed. R. Civ. P. 1 (rules "should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding").

The Litsingers advance twenty-seven acts, at times phrased generically, that they claim violate the OCSPA. Some fair winnowing from their briefing restates these acts in five claims: (1) violating the deposit rule; (2) violating the motor vehicle sales rule; (3) misrepresenting the RV's characteristics, uses, or quality[5]; (4) stalling or delaying a legal obligation without a valid defense; and (5) continuing to repair the RV after receiving a litigation hold. The Litsingers also argue that Sirpilla violated the OCSPA through generalized violations of the statute. The Litsingers have abandoned on summary judgment any other OCSPA theory.[6] *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008)

---

[5] For ease, this summary combines what the statute calls two deceptive acts: "[t]hat the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have" and "[t]hat the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not." Ohio Rev. Code §§ 1345.02(B)(1), (B)(2).

[6] In opening briefing, Sirpilla identifies four alleged deceptive acts it contends are actionable under the OCSPA: (1) misrepresenting that the RV had certain characteristics or uses; (2) misrepresenting that the RV was of a particular standard or quality; (3) representing that the transaction involved a warranty or disclaimer when Sirpilla knew that was false; and (4) soliciting a person to enter into a contract based on oppressively one-sided or harsh terms. The Litsingers have not preserved the last two theories at summary judgment.

(abandonment when not argued in summary judgment response). Given that Sirpilla cannot timely challenge the pleading's sufficiency at summary judgment, the dealer recognizes that the complaint adumbrates the third claim but contests the other theories. It has cause to do so for only one.

The factual basis for one of the Litsingers' new OSCPA theories is conspicuously absent from their pleading or any disclosure in this case. For the first time at summary judgment, the Litsingers argue that Sirpilla violated Ohio's deposit rule. *See* Ohio Admin. Code § 109:4-3-07. This rule requires a supplier to provide consumers with a written receipt of their deposit that conspicuously states certain information. *See* Ohio Admin. Code § 109:4-3-07(B). On summary judgment, the Litsingers say Sirpilla violated the deposit rule in a number of ways, but only a single vacuous allegation of violations of "other consumer protection acts" or a generic reference to a stalled or delayed legal obligation in the complaint could capture such a theory. The complaint contains no references to any deposits made by the Litsingers, to any documentation provided (or not provided) in receipt, or even other factual underpinnings to a deposit rule claim. No disclosure since the complaint, at least none cited by the Litsingers, preserves this theory. In addition, the Litsingers never sought to amend their complaint to add this theory; and doing so now given what has transpired already would cause unreasonable delay and make a cumbersome case even more unwieldy and costly. The case cannot proceed on this forfeited theory.[7] *See, e.g.*, *Chessie Logistics*, 867 F.3d at 860.

The court thus turns to the second theory—that Sirpilla violated the motor vehicle sales rule. *See* Ohio Admin. Code § 109:4-3-16. This rule prevents a dealer from using a statement, layout, or illustration in an advertisement or sales presentation that creates to a reasonable consumer a false impression about the vehicle's material features.[8] Sirpilla says the complaint never presented this claim,

---

[7] This conclusion obviates the need to discuss arguments in 43 pages of briefing on a third summary judgment motion solely on the issue of the deposit rule (ECF 85, 95, 101). The court denies that motion.

[8] This differs from Ohio's motor vehicle repairs and services rule, which the Litsingers pleaded in their complaint but abandon on summary judgment. *See* Ohio Admin. Code § 109:4-3-13.

but the complaint alleged that the Litsingers acquired this RV in reliance on not just the warranty but "advertising representations." If Sirpilla believed this allegation deficient or if the dealer needed more information, then its option was to file a Rule 9 or 12 motion or to pursue discovery.

In fairness, Sirpilla mentions—albeit only in passing—that it served interrogatories that elicited little factual information from the Litsingers about their OCSPA claims. The dealer then seemingly throws up its hands and concludes that it proves "challenging to ascertain what actions of Sirpilla allegedly violated the OCSPA," as though the court must ascertain this on its own from a dense record. The court has deciphered enough arguments for the parties in this case. It won't develop any more. The dealer's one sentence in its opening brief and one sentence in its reply brief about the interrogatory response here doesn't preserve the point.

The court may well have taken the Litsingers to task here. Merely regurgitating the generic allegations of the complaint in response to an interrogatory that kindly asks for the factual basis for any deceptive act or misrepresentation wouldn't be sufficient. Even if that factual basis wasn't entirely known at the time, *see* Fed. R. Civ. P. 33(a)(2), plaintiffs would have an obligation to supplement in a timely manner if their disclosure or interrogatory response was incomplete or if the information hadn't otherwise been shared with the parties, *see* Fed. R. Civ. P. 26(e)(1)(A). Referring to a lawyer-written notice that lacked the factual basis for these claims wouldn't be enough. The gamesmanship of having clients respond "we're not lawyers" wouldn't come close to complying with their discovery obligations to disclose facts. Interposing a silly objection that the interrogatory called for a lengthy answer when the plaintiffs were the ones who alleged twenty-seven violations of the OCSPA wouldn't hold water. Interposing a sillier objection that the interrogatory was a contention interrogatory would have been worse still. Contention interrogatories are a perfectly legitimate discovery tool and often

recommended to flesh out generic allegations in a pleading.[9] *See, e.g.*, Fed. R. Civ. P. 33(a)(2); *In re Ocwen Loan Servicing, LLC Mortg. Servicing Litigation*, 491 F.3d 638, 641 (7th Cir. 2007); *Vidimos*, 99 F.3d at 222. In short, not sharing facts that undergird allegations, and allegations of deception particularly, when asked, would prove troublesome. But none of these points have been made here, and no argument has been developed to explain why the Litsingers have been dilatory in not disclosing or supplementing facts, either in their interrogatory response or through depositions or other disclosures, that should bar them from pursuing their claims beyond summary judgment. As Sirpilla well knows, it isn't the court's job to find the needle in the haystack, the truffle in the field, or the Waldo on the page. *See Gross*, 619 F.3d at 702. Future plaintiffs would be wise to take heed nonetheless.

The Litsingers say Sirpilla violated the motor vehicle sales rule by ostensibly oral representations—for instance, a Sirpilla representative telling them that the unit had heated floors working off the Aqua-Hot system when it apparently didn't—rather than any written advertisement or sales presentation. Such theories would seem to be covered already by other sections of the OCSPA, including the section that prohibits misrepresentations about the unit's characteristics. Sirpilla never argues that this rule only applies to written advertisements or sales presentations and never offers any other basis to award summary judgment on this theory—other than it wasn't pleaded. Finding that sole point wanting, the court declines summary judgment on this theory under the OCSPA.

Recalling that the third OCSPA theory has been yielded to trial, the court turns to the fourth theory. The Litsingers claim that Sirpilla stalled or delayed in its so-called legal obligation to repair the RV, particularly the dealer's delay in ordering parts. They say Ohio law has defined stalling, delaying, and avoiding a legal obligation as a deceptive act. Sirpilla argues that the Litsingers have not established

---

[9] The court addresses only contention interrogatories. Contention-based document requests or interrogatories disguised as actual contention-based document requests would not be appropriate in light of work product protections.

any legal obligation that existed between these buyers and the dealer that Sirpilla then stalled or delayed completing.

Though one Ohio court nearly 47 years ago recognized that "a supplier who avoids or attempts to avoid . . . obligations commits a deceptive act [that violates the OCSPA]" *Brown v. Lyons*, 332 N.E.2d 380, 386 (Ohio C.P. Nov. 12, 1974), this broad statement would seem to swallow the rule if taken at face value as the Litsingers suggest. For example, a mere contractual breach could be viewed as suddenly deceptive. That alone the court won't countenance as a deceptive act, particularly when that case in actuality concerned much more. Still, even under the Litsingers' theory, there must first be a legal duty to the customer for the supplier to complete, such as one created under a warranty. *See id.* ("Where a supplier has legal obligations to consumers, and where there are no valid legal defenses for not performing those obligations," then stalling or delaying is a deceptive act). The Litsingers identify no legal obligation by Sirpilla to repair the RV or to order parts on a certain timetable. Sirpilla was neither a warrantor nor a cowarrantor. *See* 15 U.S.C. § 2307. Forest River provided the warranty. That imputed no legal duties to Sirpilla. The Litsingers cannot pursue this alleged delay by Sirpilla as a deceptive act under the OCSPA.[10]

Turning to the fifth theory, the Litsingers argue that Sirpilla continued to repair the RV after receiving a litigation hold. Forest River requested an opportunity to inspect the RV at Sirpilla with the Litsingers present. The day before, the Litsingers (through counsel) sent a litigation hold letter instructing Sirpilla to preserve the RV in its current condition. When the Litsingers arrived the next morning for the inspection, they say they saw Sirpilla employees working on the unit. The Litsingers

---

[10] Based on this conclusion, the court need not address a sidepoint by Sirpilla that the Litsingers have not established a "consumer transaction" under the OSPCA in this respect, though that argument would seem to be addressed squarely by its statutory definition. A "consumer transaction" is defined as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Ohio Rev. Code § 1345.01(A).

call this deceptive under the OCSPA, but they cite no statutory provision, regulation, or Ohio decision to this effect. Nor do they establish on this record that Sirpilla or these particular employees had become aware of the litigation hold, albeit sent by facsimile late afternoon (3:55 p.m.) the day before the early morning when the Litsingers arrived for the inspection (7:30 a.m.). The Litsingers have not established that any evidence had been spoliated; and, absent that, the court isn't inclined to view the minor work by these two Sirpilla technicians as deceptive under the OCSPA.

The Litsingers also generalize OCSPA violations, but nothing else that gets traction as a triable issue. In Ohio, "the mere fact that a party has breached a contract or violated a warranty does not give rise to a[n] OCSPA claim in the absence of indicia of unfair or deceptive practices associated therewith." *Wasserman v. Home Corp.*, 2008 Ohio App. LEXIS 4597, 6-7 (Ohio Ct. App. Oct. 23, 2008); *see also Marrone v. Philip Morris USA, Inc.,* 850 N.E.2d 31, 36 (Ohio 2006) (requiring alleged deceptive acts to be substantially similar to deceptive acts previously identified by Ohio courts). Such a showing has not been made to create genuine factual issues for the jury. Accordingly, the court grants summary judgment on all OCSPA theories, except those under Ohio Revised Code §§ 1345.02(B)(1), (B)(2) and Ohio Administrative Code § 109:4-3-16.

4.    *The Litsingers Abandoned Their Contract and Warranty Claims Against Sirpilla.*

Sirpilla argues against the warranty and contract claims. For instance, Sirpilla contends that it never offered much less breached a warranty. In response, the Litsingers offer no evidence or argument to sustain their claims. They abandon these claims. *See Maclin,* 520 F.3d at 788. The court accordingly grants summary judgment for Sirpilla on these claims.

5.    *Sirpilla's Contractual Limitations of Remedies Are Valid and Enforceable.*

Sirpilla argues that its sales agreement disclaims consequential and incidental damages and precludes the remedies of rescission and revocation of acceptance. This issue now exceeds the scope of Ohio's UCC, which otherwise permits such limitations so long as they aren't unconscionable. *See*

Ohio Rev. Code §§ 1302.93(A)(1), (C); *Westfield Ins. Co. v. HULS Am., Inc.*, 714 N.E.2d 934, 947-48 (Ohio Ct. App. 1998). The UCC claims have been abandoned, so the parties turn their focus to the remedies under the OCSPA.

The OCSPA allows the remedy of rescission based on a consumer's revocation of the transaction. Ohio. Rev. Code §§ 1345.09(A) & (C)(1). Under Ohio law, a consumer may rescind a transaction and recover actual damages, which include incidental and consequential damages, as well as non-economic damages, revocation of acceptance, and rescission of the transaction. Ohio Rev. Code §§ 1345.09(A), (C)(1) & (G). Should a consumer wish to rescind or revoke acceptance of a transaction, the consumer must demonstrate the grounds for the remedy within a reasonable time after discovery of the violation, and it must occur before any substantial change in the vehicle's condition. Ohio Rev. Code § 1345.09(C)(1).

In opening, Sirpilla argues that its contract eliminates all of these remedies without specifying for which claims, though the dealer cites only law under the UCC, not OCSPA. Picking up on this omission, the Litsingers argue rescission remains their remedy under the OCSPA, based on their revocation fourteen months after the sale and less than three months after they retrieved the RV from Sirpilla after the last repair opportunity. They say their revocation came in the form of their federal lawsuit on August 9, 2018, despite other cases viewing written letters or oral statements beforehand only as notices of revocation, albeit again under the UCC. *See, e.g., Aluminum Line Prods. Co. v. Rolls-Royce Motors, Inc.*, 613 N.E.2d 990, 992 (Ohio 1993); *Lanham v. Solar Am. of Cincinnati, Inc.*, 501 N.E.2d 1245, 1248 (Ohio Ct. App. 1986).

Neither side cites any law that guides whether these contractual limitations of remedies prove enforceable vis-à-vis the OCSPA. Instead, the briefing in response and reply devolve into a public policy discussion as that concerns the State of Ohio—whether Ohio public policy justifies the enforcement of these contractual remedies. "Where a state's highest court has not ruled on an issue,

[the court] must apply the law in a manner [it] believe[s] the state supreme court would, if presented with the issue." *In re Jaffe*, 932 F.3d 602, 605 (7th Cir. 2019); *see also Liberty Mut. Fire Ins. Co. v. Statewide Ins. Co.*, 352 F.3d 1098, 1100 (7th Cir. 2003). Ever cognizant that this is a federal court, and one sitting in Indiana, the court defers to the State's Constitution and law announced by the Ohio Supreme Court.

The Ohio Constitution "protects the freedom of contract." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). "The general assembly shall have no power to pass . . . laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intentions of the parties . . . by curing omissions, defects, and errors, in instruments . . . , arising out of their want of conformity with the laws of this state." Ohio Const. art. II, § 28. The Ohio Supreme Court has interpreted this language as "coextensive with that of the federal Constitution." *See Westfield*, 797 N.E.2d at 1261. "The freedom to contract and the attendant benefits and responsibilities of the parties to a contract are integral to the liberty of the citizenry, so much so that the United States Constitution specifically protects against state encroachment upon contracts." *Id.* at 218.

This freedom to contract in Ohio extends to remedies under the OCSPA, even given its broad remedial purpose. *See, e.g.*, *Piqua Branch of State Bank of Ohio v. Knoop*, 57 U.S. 369, 391 (1853) (finding Ohio court's interpretation of bank charter unconstitutional because "if such contract be impaired by an act of the State such act is void, as the power is prohibited to the State"); *Credit Acceptance Corp. v. Davisson*, 644 F. Supp.2d 948, 959 (N.D. Ohio 2009) ("agreement does not violate a plaintiff's rights merely because it precludes a limited number of remedies") (arbitration agreement); *see also Ewalt v. Gatehouse Media Ohio Holdings II, Inc.*, 2021 U.S. Dist. LEXIS 40258, 49 (S.D. Ohio Mar. 4, 2021) ("No OCSPA claim is established where a contract gives one party the right to modify an agreement where the modification right is limited by a notice or timing provision. Parties to a contract are free to insert provisions which apportion damages in the event of default. . . . Further, courts frequently hold that

20

limitation of liability provisions are not unconscionable.") (quotations and citations omitted); *M.G.A. Inc. v. Amelia Station, Ltd.*, 2002 Ohio App. LEXIS 5177, 7-8 (Ohio Ct. App. Sept. 27, 2002) (Ohio courts disfavor limitations on remedies, but will uphold such limitations when there is "some contractual language as an adequate expression of the seller's intent to limit the buyer's remedies.").

In one sentence, the Litsingers argue that "the Ohio legislature has held that a consumer is entitled to rescind the transaction as a matter of public policy" and cite only generally to Ohio Revised Code § 1345.09. This statute describes the OCSPA cause of action and a consumer's private remedies. Nowhere have the Litsingers developed an argument that undermines the Ohio Constitution's proscription against contractual impairments. *See Gross*, 619 F.3d at 704. Sirpilla and the Litsingers had the freedom to contract. They chose to preclude consequential and incidental damages and the remedies of rescission and revocation of acceptance. These contractual limitations are enforceable under the OCSPA. The court grants summary judgment accordingly.

B.      *Forest River's Summary Judgment Motion.*

1.      *Indiana Law Applies to the Express Warranty, Contract, and Deceptive Consumer Act Claims, Whereas Ohio Law Applies to the Implied Warranty Claim Against Forest River.*

The parties start all over the map on applicable law. Forest River initially argues for Indiana law, while the Litsingers often advocate for Ohio law, though at times they offer alternative theories of recovery under both Indiana and Ohio law. For the warranty claims, Forest River returns in reply to agree to Ohio law for the implied warranty claim, contra its opening position, but not for the express warranty or consumer protection claims. This choice of law issue merits resolution at the outset.

The court again applies the choice-of-law rules of Indiana to determine whether Indiana or Ohio substantive law applies. *See Auto-Owners*, 580 F.3d at 547; *Jacobs*, 474 F. Supp.3d at 992. The warranty from Forest River contains no choice of law provision. Accordingly, the court must consider if the claims here sound in tort or contract. This case involves both. Before engaging in choice of law analysis in Indiana, there must be a conflict between state laws "important enough to affect the

outcome of the litigation." *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004) (citation omitted); *Rexroad v. Greenwood Motor Lines, Inc.*, 36 N.E.3d 1181, 1183 (Ind. Ct. App. 2015). Notably, Indiana courts have engaged in the choice of law analysis when there is a "potential conflict" between the laws of two candidate states. *See Stonington Ins. Co. v. Williams*, 922 N.E.2d 660, 665 (Ind. Ct. App. 2010).

The Litsingers allege two warranty claims, both of which sound in contract. Though a warranty claim may also sound in tort, *see, e.g., Wright Bachman, Inc. v. Hodnett*, 133 N.E.2d 713, 716 (Ind. 1956), the claims here aren't in the nature of a tort-based product claim. The Litsingers allege that Forest River breached expressed and implied warranties in their commercial dealings resulting in economic damage, not because of any personal injury, so these claims sound in contract. *See, e.g., Hitachi Constr. Mach. Co. v. AMAX Coal Co.*, 737 N.E.2d 460, 465 (Ind. Ct. App. 2000) (quoting *B & B Paint Corp. v. Shrock Mfg., Inc.*, 568 N.E.2d 1017, 1020 (Ind. Ct. App. 1991)).

Without a law selected in the warranty, Indiana applies the law of the forum with the most intimate contact to a contract dispute. *Nautilus Ins. Co. v. Reuter*, 537 F.3d 733, 737 (7th Cir. 2008); *Nat'l Union Fire Ins. Co. v. Std. Fusee Corp.*, 940 N.E.2d 810, 814 (Ind. 2010). The court assesses the most intimate contacts by considering (a) the place of contracting, (b) the place of contract negotiation, (c) the place of performance, (d) the location of the contract's subject matter, and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *See Nat'l Union*, 940 N.E.2d at 814. Indiana doesn't employ *dépeçage*—analyzing separate issues within claims to assign state law for each issue, *see Simon*, 805 N.E.2d at 805—but instead treats each independent claim separately for purposes of choosing applicable law, *see, e.g., Ky. Nat. Ins. Co. v. Empire Fire & Marine Ins. Co.*, 919 N.E.2d 565, 575-76 (Ind. Ct. App. 2010) ("Although Indiana allows different claims to be analyzed separately, it does not allow issues within those counts to be analyzed separately . . . For example, an Indiana court might analyze a contract claim and a tort claim independently but would not separately analyze and apply the law of different jurisdictions to issues within each claim.") (citation omitted).

22

The court thus analyzes the express warranty, implied warranty, and contract claims separately to decide the right state law to apply to these disputes.

Let us begin with the more contested and fairly the more complicated claim here—express warranty. Forest River says Indiana law applies whereas the Litsingers argue for Ohio law. Though seemingly absent from their briefing, the parties expounded at oral argument on whether a conflict even exists between Indiana and Ohio law—a necessary first step before wading into choice of law analysis. Forest River says there is no conflict, but the Litsingers contend there is based on a "shaken faith" theory under *McCullough v. Bill Swad Chrysler-Plymouth, Inc.*, 449 N.E.2d 1289, 1294 (Ohio 1983).

In *McCullough*, 449 N.E.2d at 1292, the Ohio Supreme Court addressed whether a buyer, who continued to operate a vehicle after she notified the seller of her intent to rescind the purchase agreement, had waived her right to revoke her acceptance of the vehicle. Under Ohio's UCC, a buyer may revoke her acceptance of a product when its non-conformity substantially impairs its value to her, among other requirements such as notice. The buyer received a car whose brakes failed more than once and whose engine abruptly shut off during a trip, along with a host of other problems that persisted beyond many repair attempts. The dealer eventually refused to perform any more work, and the buyer rescinded the deal; but she continued to operate the car. In concluding that the buyer could still revoke her acceptance, the court held that "[a]ny defect that shakes the buyer's faith or undermines [her] confidence in the reliability and integrity of the purchased item is deemed to work a substantial impairment of the item's value and to provide a basis for revocation of the underlying sales agreement." *Id.* at 1294. In short, *McCullough* discussed this "shaken faith" theory only in the context of the UCC's remedy of revocation of acceptance.

This isn't a conflict that drives the outcome here. *See Simon*, 805 N.E.2d at 805. Indeed, this "shaken faith" theory in aid of a revocation remedy isn't an option for the Litsingers against Forest River. The remedy of revocation of acceptance is only available when "a direct buyer-seller relationship

exist[s]." *Funk v. Montgomery AMC/Jeep/Renault*, 586 N.E.2d 1113, 1116 (Ohio Ct. App. 1990). This requirement precludes a buyer from pursuing a revocation remedy against a distant manufacturer when the buyer stands in privity just with the dealership, unless the dealership served as the manufacturer's agent in selling the vehicle. *Id.* at 1117; *see also Arrow Int'l, Inc. v. Rolls-Royce Motors, Inc.*, 1986 Ohio App. LEXIS 6437, 15-17 (Ohio Ct. App. Apr. 17, 1986). An agent for one purpose isn't necessarily an agent for another purpose. Whatever arguments about agency here, the Litsingers have not established that Sirpilla served as Forest River's agent in selling the vehicle. The Litsingers thus cannot pursue revocation as a remedy against Forest River and consequently cannot be aided by a "shaken faith" theory to achieve this remedy. Because this theory doesn't pose a conflict between Ohio and Indiana law that will drive this case's outcome, and because the parties point to no other conflict to require the court to run a conflict-of-laws analysis for the express warranty claim, the court applies Indiana law (the forum state) to this claim. *See Simon*, 805 N.E.2d at 805.

The parties agree that Ohio law applies to the implied warranty claim. And rightly so. In Ohio, privity must exist to sustain a contract-based implied warranty claim. *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007). In contrast, Indiana requires no vertical privity to sue for breach of an implied warranty of merchantability. *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005). This presents a substantial conflict among state laws and one that proves outcome determinative. *See Simon*, 805 N.E.2d at 805.

The implied warranty arises from the vehicle's sale, thus Sirpilla's purchase agreement and Forest River's attendant written warranty that limits the implied warranty's duration. The purchase agreement was consummated in Ohio. The limited warranty was registered online shortly after purchase. The internet is not a physical place, nor was registration necessary to perfect the purchase agreement, so this registration alters little the weight of this factor toward Ohio. *See Am. Emplrs. Ins. Co. v. Coachmen Indus., Inc.*, 838 N.E.2d 1172, 1180 (Ind. Ct. App. 2005); *Hartford Acc. & Indem. Co. v.*

24

*Dana Corp.*, 690 N.E.2d 285, 292 (Ind. Ct. App. 1997). To the extent negotiations occurred, they occurred over the RV sale in Ohio, where the warranty was also first presented. The contract's performance—delivery of the RV—occurred in Ohio. The majority of repairs occurred in Ohio. The remaining repair work occurred in Indiana, but this factor still weighs heavily in favor of Ohio. The RV—the subject matter of the contract—exists in Ohio. The last factor splits evenly between Ohio and Indiana—each side residing or being located in one of these states. Overall, these factors strongly favor Ohio as having the most intimate relationship with this contract, so Ohio law applies to the implied warranty claim.

On the contract claim, the parties disagree about whether Indiana or Ohio law should apply, so the court turns first to determine whether a conflict between Indiana and Ohio law large enough to affect the outcome of the case exists. *See Simon*, 805 N.E.2d at 805. In the context here, there isn't. The Litsingers contend that Forest River's warranty constitutes the contract and that "reasonable minds could conclude that Forest River breached that contract by failing to repair the RV's defects within the warranty period" (ECF 100 at 18). In short, the Litsingers have just repackaged their warranty claim as a contract claim. The Litsingers never argue another theory in briefing to defend their contract claim, so the court never reaches anything now abandoned. *See Maclin*, 520 F.3d at 788.

Though contract and warranty claims may be different, under the circumstances here, the Litsingers cannot sustain a separate contract claim, whether under Indiana law, *see Smith v. Nexus RVs LLC*, 468 F. Supp.3d 1012, 1024 (N.D. Ind 2020) (Leichty, J.); *Zawistoski v. Gene B. Glick Co.*, 727 N.E.2d 790, 792 (Ind. Ct. App. 2000); *cf. Martin v. Thor Motor Coach*, 474 F. Supp.3d 978, 984-85 (N.D. Ind. 2020) (Leichty, J.); *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 379 n.3 (Ind. 2019); *Perry v. Gulf Stream Coach, Inc.*, 814 N.E.2d 634, 644 n.6 (Ind. Ct. App. 2004), or Ohio law, *see Booth v. Duffy Homes, Inc.*, 2008 Ohio App. LEXIS 4399, 8 n.2 (Ohio Ct. App. Oct. 9, 2008); *Nordberg, Inc. v. Sylvester Material Co.*, 654 N.E.2d 1358, 1363-64 (Ohio Ct. App. 1995). Without a conflict, the

court applies Indiana law. *See Simon*, 805 N.E.2d at 805. Doing so leads to an inescapable summary judgment on this claim—as a mere repackaged warranty claim. The court addresses this claim no more.

The Litsingers also allege deceptive consumer practices. In either Indiana or Ohio, such claims are statutory and tort-like. *See Mohme v. Deaton*, 2006 Ohio App. LEXIS 7021, 5, 8 (Ohio Ct. App. Dec. 28, 2006) (describing a violation of the Ohio Consumer Sales Protection Act as a tort); *See Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073-74 (Ind. 1987) (analyzing choice of law for consumer protections claims under a tort standard); *see also Bordoni*, 2020 U.S. Dist. LEXIS 222903 at 21 (same under the IDCSA). The parties once again disagree about whether Indiana or Ohio law applies, so the court must decide first whether there is a conflict between Indiana and Ohio law significant enough to affect the outcome of the case. *See Simon*, 805 N.E.2d at 805.

The Indiana Deceptive Consumers Sales Act explicitly delineates forty acts that the law deems deceptive. *See Castagna*, 340 F. Supp.3d at 741; *Lawson v. Hale*, 902 N.E.2d 267, 274 (Ind. Ct. App. 2009) ("the categories of deceptive acts giving rise to liability under the [Act] are very specifically defined"). In 2014, the Indiana General Assembly made this list non-exclusive, likely in response to *Lawson*, amending the statute to say these enumerated acts aren't meant to limit the scope of what the law deems unfair, abusive, or deceptive. *See* Ind. Code § 24-5-0.5-3(a)-(b); *see also Gasbi, LLC v. Sanders*, 120 N.E.3d 614, 619-20 (Ind. Ct. App. 2019) (reaching same conclusion). Appreciating this amendment's relative recency, Indiana courts have not read this new allowance expansively and instead adhered to those acts truly "unfair, abusive, or deceptive." Ind. Code § 24-5-0.5-3(a); *see, e.g., Gasbi*, 120 N.E.3d at 620 (considering an unfair consumer fee deceptive); *cf. Poore v. Indianapolis Pub. Schs*, 155 N.E.3d 643, 653 n.2 (Ind. Ct. App. 2020) ("provision of education services" was not a category of services contemplated under the IDCSA), *reversed on other grounds* 2021 Ind. LEXIS 181 (Ind. Mar 18, 2021); *Castagna*, 340 F. Supp.3d at 741 (breach of warranty alone not a deceptive act).

In contrast, from largely its inception, liability under the Ohio Consumer Sales Practices Act (OCSPA) hasn't been limited to a statutorily defined list of deceptive acts, and instead includes decades of law that incorporates past decisions of Ohio courts, attorney general decisions, and regulatory actions. *See* Ohio Rev. Code §§ 1345.02(B) & 1345.05(B)(2); *see, e.g., State ex rel. Celebrezze v. Hughes,* 569 N.E.2d 1059, 1063-64 (Ohio 1991); *Luckoski v. Allstate Ins. Co.*, 5 N.E.3d 73, ¶26 (Ohio Ct. App. 2013). The Ohio Attorney General has substantive rulemaking authority under the OCSPA. *See Celebrezze*, 569 N.E.2d at 1063-64. Although Forest River identifies no such specific rule of concern, the company contends that the breadth of the potential deceptive acts recognized in Ohio would extend beyond what has been recognized in Indiana, and the Litsingers offer no reason to believe the outcome wouldn't change were Ohio law to apply here. Indeed, at oral argument, the Litsingers distinguished the notice requirements of the two state laws (Tr. 51). The court's review reveals a "potential conflict" too. *Stonington Ins.*, 922 N.E.2d at 665.

As it turns out, running the choice-of-law analysis leads to the same result—Indiana law for this tort-based claim—if the court merely concluded that there wasn't a potential conflict. Indiana applies the *lex loci delicti* rule to decide choice of law for tort-based claims. *See Simon*, 805 N.E.2d at 805. Under that rule, the court looks to "the substantive laws of the state where the last event necessary to make an actor liable for the alleged wrong [took] place." *Id.* (citation omitted). The Litsingers contend that Forest River acted deceptively by breaching its warranty and by stalling the delivery of repair parts to Sirpilla for the unit to be fixed.

A breach of warranty alone isn't enough to constitute a deceptive act. *See McKinney v. State*, 693 N.E.2d 65, 73 (Ind. 1998); *Castagna v. Newmar Corp.*, 340 F. Supp.3d 728, 741 (N.D. Ind. 2018). Nothing within the statute's plain language or the gloss of cases suggests that a warranty breach alone suffices, and such a view would extend the Indiana General Assembly's declaration of what is "unfair, abusive, or deceptive" beyond its intent. Ind. Code §§ 24-5-0.5-3(a), (b). A prohibited act may include

"both implicit and explicit misrepresentations," Ind. Code § 24-5-0.5-3(a), but a warranty breach will often be neither. To put a finer point on this, that a product suffers from an unforeseen defect, or even that the manufacturer proves unable to complete the warranted remedy of a repair, or perhaps that the repair occurs later than as promised in the warranty because of commercial reasons, or that any other number of warranty breaches occur doesn't mean that the supplier acted abusively or deceptively. The statute requires more. *See, e.g.*, Ind. Code §§ 24-5-0.5-3(b)(1), (b)(2). A misrepresentation about a warranty may prove deceptive, *see, e.g.*, Ind. Code § 24-5-0.5-3(b)(8), but not a mine-run breach of warranty. *See Castagna*, 340 F. Supp.3d at 741. Indeed, the Indiana Supreme Court has explained that a statement of opinion or mere puffing about a product will not serve as a representation of fact that could be deceptive under the IDCSA. *See Kesling v. Hubler Nissan, Inc.*, 997 N.E.2d 327, 332-33 (Ind. 2013).[11] The breach of warranty theory doesn't support liability under the IDCSA, so the location of the alleged breach is immaterial to the choice-of-law analysis.

That leaves the theory about Forest River deceptively delaying repair parts. To the extent this theory has any legs, and more on that later, the conduct occurred in Indiana (*see, e.g.*, ECF 100-31 at 34). In an email to the Litsingers, a Sirpilla representative said it was "STILL waiting on parts . . . but now we are expecting them to come in about the second and third week of February" [ECF 100, Ex. 19]. The reasonable inference is that these parts were coming from Forest River. The last location of an alleged deceptive act was in Indiana, so its law applies to this claim. *See Simon*, 805 N.E.2d at 805.

B.    *Forest River is Entitled to Summary Judgment on the Implied Warranty of Merchantability Claim.*

The Litsingers pursue an implied warranty theory under state law and the federal MMWA. They are linked. Under the MMWA, a consumer damaged by the failure of a warrantor or supplier (like Forest River) to comply with "any obligation under [the MMWA], or under a written warranty,

---

[11] Likewise in Ohio, "the mere fact that a party has breached a contract or violated a warranty does not give rise to a[n] OCSPA claim in the absence of indicia of unfair or deceptive practices associated therewith." *Wasserman v. Home Corp.*, 2008 Ohio App. LEXIS 45972, 6-7 (Ohio Ct. App. Oct. 23, 2008).

implied warranty, or service contract, may bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1). The term "implied warranty" means "an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7).

The MMWA merely establishes the conditions to a federal suit rather than create an independent form of liability, *see Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (MMWA "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action"); *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (MMWA "does not provide an independent basis for liability; it only provides for federal jurisdiction for some state claims"). In other words, the MMWA relies on the state cause of action and acts as a vehicle for it in federal court. *Anderson*, 662 F.3d at 781. When a state claim fails, so does the MMWA claim. *See Priebe*, 240 F.3d at 587; *Martin*, 474 F. Supp.3d at 984.

Ohio law governs the implied warranty claim. *See supra*. In Ohio, privity must exist to sustain a contract-based implied warranty claim. *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007). Forest River argues that it is entitled to summary judgment on this claim because it wasn't in privity with the Litsingers, despite both identifying Sirpilla as Forest River's authorized representative for repairs and warranting repairs at Sirpilla's facility.[12]

An implied warranty of merchantability arises by operation of law. Under Ohio law, a "warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ohio Rev. Code § 1302.27(A). Ohio has considered a warranty between a manufacturer and consumer as collateral to the sales agreement between the consumer and dealer, and thus "not a contract [that] incorporates the [UCC's] concepts of warranty." *Haynes v. George Ballas Buick-GMC Truck*, 1990 Ohio App. LEXIS 5661, 17-18 (Ohio Ct. App. Dec. 21,

---

[12] In fairness, Forest River first argued privity only in reply, which normally would be waived; but the company did so because of the Litsingers' argument that Ohio law applied rather than Indiana law. The Litsingers also addressed the anticipated privity argument in their response, so the court takes this issue up.

1990). A distant consumer cannot sustain a UCC-based implied warranty claim against the manufacturer without privity. *See id.*; *see also Curl*, 871 N.E.2d at 1147 (calling this "longstanding Ohio jurisprudence"); *Caterpillar Fin. Servs. Corp. v. Harold Tatman & Son's, Enters.*, 50 N.E.3d 955, 962 (Ohio Ct. App. 2015) (same)."[V]ertical privity exists only between immediate links in the distribution chain," *Curl*, 871 N.E.2d at 1148, and that isn't the relationship between the Litsingers and Forest River.

Ohio law recognizes two circumstances under which a consumer who purchased a product from a dealer comes into privity of contract with the distant manufacturer: when an agency relationship exists between the manufacturer and dealer, or when the consumer is an intended third-party beneficiary to the contract between the manufacturer and dealer. *Bobb Forest Prods., Inc. v. Morbark Indus., Inc.*, 783 N.E.2d 560, 576 (Ohio Ct. App. 2002); *see Curl*, 871 N.E.2d at 1148. The Litsingers haven't argued that they were intended third-party beneficiaries to a contract between Sirpilla and Forest River, or designated any provisions of that contract to demonstrate this was an intended benefit. *See, e.g., Bobb Forest*, 783 N.E.2d at 576. The Litsingers argue only agency.

The parties seem to disagree about the law applicable to this agency issue (Tr. 14, 48). The court applies Ohio law to this agency issue. Agency defines the legal duty of an agent to a principal, *Costanzo v. Nationwide Mut. Ins. Co.*, 832 N.E.2d 71, 76 (Ohio Ct. App. 2005), and stems from state substantive law, *see Callen v. Int'l Bhd. of Teamsters, Local 100*, 761 N.E.2d 51, 56 (Ohio Ct. App. 2001) (describing changes impacting the "substantive law of agency"). Though "Indiana allows different claims to be analyzed separately, it does not allow issues within those counts to be analyzed separately." *Kentucky Nat. Ins.*, 919 N.E.2d at 575-76; *accord Simon*, 805 N.E.2d at 801. Ohio law applies to the implied warranty claim. As a derivative issue within the implied warranty claim, Ohio law applies to this agency question.

To create an agency relationship, a party must show that "(1) the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly

permitted the agent to act as having such authority; and (2) the person dealing with the agent knew of the facts, and acting in good faith, had reason to believe and did believe that the agent possessed the necessary authority." *Aluminum Line Prods. Co.*, 649 N.E.2d at 893 (Ohio Ct. App. 1994). The mere act of selling a product manufactured by a different business doesn't establish an agency relationship. *Curl*, 871 N.E.2d at 1148. The test is instead "whether the [manufacturer and dealer] agree that [the dealer's] duty is to act primarily for the benefit of the one delivering the goods to [the dealer] or is to act primarily for [the manufacturer's] own benefit." *Id.*

An agency relationship may be limited to a particular purpose. *See Funk*, 586 N.E.2d at 1117. The Litsingers argue that Sirpilla served as Forest River's agent both in the unit's sale and in the unit's repair. The Litsingers cannot seriously contend the first agency theory. The purchase agreement between the Litsingers and Sirpilla, at the start (second sentence), says they "understand and acknowledge that [Sirpilla] is a separate and distinct entity from, and not the principal or agent [of] any manufacturer(s) of the Unit" (ECF 95-4). The purchase agreement repeats this same statement later: "Dealer is in no respect the agent of the manufacturer" (*Id.* at 2, ¶ 7). And later it repeats: "Buyer(s) acknowledge that Dealer is not an agent of the manufacturer" (*Id.* at 2 ¶ 12). The Litsingers cannot in good faith have believed that Sirpilla served as Forest River's agent in the unit's sale. *See Aluminum Line*, 649 N.E.2d at 893.

Sirpilla sells many brands of RVs, not just Forest River brands. Sirpilla buys units from Forest River. Sirpilla determines on its own its sale price to the customer (in part based on the dealership's cost). Sirpilla receives the money from the customer's purchase. Any Forest River policies that apply to Sirpilla in its independent sale of RVs are merely customary to brand protection, and not of the type or degree that would override these express contractual statements to the Litsingers that Sirpilla is selling the unit for the dealership's benefit, not as Forest River's agent (ECF 100-31). Sirpilla's resale of the units, particularly with these contract provisions, precludes a finding of agency here. *See Curl*,

871 N.E.2d at 1148 ("One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction.")

That alone disposes of the agency issue because an implied warranty must inhere in the unit's sale, not in its repair. *See*, *e.g.*, *Haynes*, 1990 Ohio App. LEXIS 5661 at 17-18. That is its origin in the law—in a sale of goods. *See* Ohio Rev. Code § 1302.27. The agency theory vis-à-vis repair work may apply to express warranty, but not implied warranty. The court thus grants summary judgment on the implied warranty claim here.

C.     *The Court Grants Summary Judgment on the Express Warranty Claim Against Forest River.*

Forest River extended a written warranty to the Litsingers. The company argues that it didn't breach its express warranty because it either fixed the defects or it never received notice and a reasonable opportunity to cure them. In making this argument, Forest River focuses only on the one opportunity it had to work on defects at its Indiana facility, which lasted 36 days, not on the repair attempts performed by its service center (Sirpilla) in Ohio under the warranty. The Litsingers (albeit arguing the wrong law) say reasonable minds could conclude that Forest River breached its express warranty because the number and duration of repair attempts were too much.

To prevail on an express warranty claim in Indiana, plaintiffs must prove (1) the existence of a warranty, (2) breach, (3) causation, and (4) damages. *See Peltz Constr. Co. v. Dunham*, 436 N.E.2d 892, 894 (Ind. Ct. App. 1982); *Smith*, 468 F. Supp.3d at 1020. A condition precedent to recovery for express warranty in Indiana is the provision of notice to the warrantor. *McClure Oil Corp. v. Murray Equip., Inc.*, 515 N.E.2d 546, 554 (Ind. Ct. App. 1987) (citing *Courtesy Enterprises, Inc. v. Richards Labs.*, 457 N.E.2d 572, 579 (Ind. Ct. App. 1983)). "[T]he buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy." Ind. Code § 26-1-2-607(3)(a). This notice requirement is satisfied when the manufacturer has actual knowledge of the nonconforming good. *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781-82 (7th

Cir. 2011) (citing *Agrarian Grain Co., Inc. v. Meeker*, 526 N.E.2d 1189, 1193 (Ind. Ct. App. 1988)); *see, e.g., B & B Paint Corp. v. Shrock Mfg., Inc.*, 568 N.E.2d 1017, 1019 (Ind. Ct. App. 1991) (notice requirement satisfied when buyer told seller that purchased paint had caused fire).

In looking strictly at state law, nothing within Indiana's UCC (at least cited by Forest River) requires the buyer to provide the warrantor an opportunity to cure. That requirement may emanate from the warranty's express language—a document that should be enforced according to its terms after all—but not explicitly from the statutory code. *See Anderson*, 662 F.3d at 782-83; *Aamco Transmission v. Air Sys., Inc.*, 459 N.E.2d 1215, 1217 (Ind. Ct. App. 1984) ("Although our research reveals cases in which the opportunity to remedy defects was a condition precedent to the [buyer's right] . . . to declare a breach of warranty, [in those cases] the opportunity to remedy defects was [required by the terms of the warranty]. Here [there is no such term and therefore an opportunity to cure was not a condition precedent to the buyer's suit for breach of warranty]."). Yes, notice often fosters this opportunity to cure, *see Anderson*, 662 F.3d at 782-83, but notice remains the express focus of Indiana's UCC. *See also Courtesy Enters., Inc. v. Richards Labs.*, 457 N.E.2d 572, 577 (Ind. Ct. App. 1983) (most important policy consideration underlying the notice requirement is to "enable the seller to settle the issue through negotiation or other non-litigious means").

Whether Forest River conflates the state law express warranty claim and the federal MMWA claim in its motion, the parties agree to the rubric of notice and opportunity to cure.[13] "[F]or all practical purposes, the MMWA operates as a gloss on . . . state law breach of warranty claims." *Anderson*, 662 F.3d at 781. A MMWA claim cannot survive without a state law claim, often a warranty claim, *see Priebe*, 240 F.3d at 587; *Martin*, 474 F. Supp.3d at 984; *see also* 15 U.S.C. §§ 2301(6) (defining written warranty), 2301(8) (defining service contract), but this federal law also requires by its own

---

[13] The Litsingers treat Indiana and Ohio law as "substantially the same," save for vertical privity.

terms that no court action[14] may be brought "for failure to comply with any obligation under any written or implied warranty or service contract . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. § 2310(e). It imbues the claim with a requirement no matter if state law does not—a reasonable opportunity to cure.

Accordingly, through the federal vehicle of the MMWA, plaintiffs bear the burden of establishing that (1) they complied with the warranty's terms; (2) their RV had a defect covered by the warranty; (3) the warrantor was given a reasonable opportunity to cure, often viewed as a reasonable time or a reasonable number of attempts at necessary repairs; (4) the warrantor failed to repair a defect; and (5) resulting damages. *See Zylstra v. Drv*, 2020 U.S. Dist. LEXIS 86341, 15 (N.D. Ind. May 18, 2020) (Lee, J.) (citing *Cimino v. Fleetwood Enterprises, Inc.*, 542 F. Supp.2d 869, 882 (N.D. Ind. 2008) (Springmann, J.)); *see also Mathews v. REV Rec. Grp., Inc.*, 2018 U.S. Dist. LEXIS 55374, 13-14 (N.D. Ind. Apr. 2, 2018) (Lee, J.), *aff'd* 931 F.3d 619 (7th Cir. 2019); *see also Mathews*, 931 F.3d at 622 (examining only number of repair attempts in deciding whether manufacturer had reasonable opportunity to cure and whether warranty failed of its essential purpose).

Forest River's express warranty leaves these standards undisturbed. Indeed, the company never argues that the warranty imposed a different obligation on the Litsingers. For instance, the warranty says "[n]o action to enforce express or implied warranties shall be commenced without prior written notice to the manufacturer and/or warrantor. . . of the alleged defect or nonconformity or the authorized repair facility's failed repair attempt" (ECF 79-5). That once again speaks to notice, not precisely an opportunity to cure. The warranty goes on to say that the manufacturer, at its option, "shall have a final opportunity to remedy," which the court reads as giving Forest River a chance to address the defects if the service center turns out unsuccessful and thus at least one more opportunity

---

[14] Save for a federal class action under MMWA, which has special rules not at issue here.

to remedy the defects. Nothing in the warranty seems to reserve a reasonable opportunity to cure that might be broader. Thus, even if the Litsingers wanted to preserve an Indiana law express warranty claim, the warranty envisions at minimum an opportunity by Sirpilla and then an opportunity by Forest River. *See Anderson*, 662 F.3d at 782-83; *Aamco Transmission*, 459 N.E.2d at 1217.

No doubt in part wanting to ensure a federal claim, the Litsingers advance an agency theory—that Sirpilla served as Forest River's service center and thus its agent for purposes of repair work. In this vein, the Litsingers contend that any notices to Sirpilla and any opportunities to cure given to Sirpilla are attributable to Forest River. Forest River argues that no agency relationship exists, so the notices and repair attempts completed at Sirpilla cannot be imputed to Forest River.

The court applies Indiana law because this agency issue falls within the context of the so-governed express warranty claim. *See Simon*, 805 N.E.2d at 805; *Kentucky Nat. Ins.*, 919 N.E.2d at 575-76. "Under Indiana law, an agency exists if the principal manifests consent to the agency, the agent acquiesces, and the principal exerts control over the agent." *Carlisle v. Deere & Co.*, 576 F.3d 649, 656 (7th Cir. 2009). Accordingly, the principal and agent must agree, and the principal must exert control over the agent. *Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 522 (Ind. 2021); *Leon v. Caterpillar Indus., Inc.*, 69 F.3d 1326, 1333 (7th Cir. 1995). The degree of control the principle exerts over an agent's day-to-day operations is essential to any finding of an agency relationship. *Leon*, 69 F.3d at 1333. Examples of such control include personnel decisions, bookkeeping and financial matters, and buying and selling inventory and supplies. *See id.* at 1333-34.

"As a general rule, a dealer is not an agent for manufacturers of the products it sells." *Carlisle*, 576 F.3d at 656; *cf. Thompson Farms, Inc. v. Corno Feed Products*, 366 N.E.2d 3, 11-12 (Ind. Ct. App. 1977) (finding agency between dealer and principal). This is true even for the more limited agency relationship advocated by the Litsingers—one that exists for the sole purpose of performing warranty repairs. *See Carlisle*, 576 F.3d at 657. This scenario has been addressed in this circuit before. In *Carlisle*,

two landscaping busines partners argued that a dealer, who conducted authorized warranty repairs on a commercial-grade tree grinder (called the Beast), was the manufacturer's agent "only for purposes of claims made under the extended [express] warranty." *Id.* The partners pointed to a warranty provision indicating that the authorized dealer could only use new or remanufactured parts and that the manufacturer would reimburse some portion of the dealer's travel expenses. *Id.* The court concluded that this language was "insufficient to establish an agency relationship, even on a more limited basis." *Id.*; *see also Andersen v. Thor Motor Coach, Inc.*, 402 F. Supp.3d 467, 479-80 (N.D. Ind. 2019) (Simon, J.) (applying *Carlisle* and concluding that an RV dealership did "not act as agents of Thor in making statements to [plaintiffs] concerning the RV's express warranty" when a dealer made representations about the warranty).

Forest River's warranty said the repairs could be obtained only at its "authorized dealers and service centers" and from its manufacturing facility. The warranty recommends that, whenever possible, warranty service should be "scheduled with the selling dealer by an appointment in order to avoid possible delays" and "[t]o ensure [the] local dealer's personal interest in [the buyer's] complete satisfaction." Forest River follows a process whereby dealers are approved, not just to sell Forest River RVs, but to become an authorized repair facility. The manufacturer has implemented a policy manual that describes how an authorized service center procures pre-authorization for warranty repairs and receives reimbursement for its work. Failure to comply could result in chargebacks or the dealer's termination. To be clear, however, the manual covers warranty submittals, parts ordering, and lot inventory, but leaves the day-to-day operations otherwise to the dealer. A Sirpilla representative, for instance, denied that the policy manual controls "every aspect" of its business relationship with Forest River. That remains consistent with the purchase agreement between the Litsingers and Sirpilla that thrice disclaimed any agency relationship between Sirpilla and Forest River. This record lacks reasonable indicia of mutual consent or control to establish agency. *See Carlisle*, 576 F.3d at 656.

This agency defense isn't all Forest River thinks it is. The absence of an agency relationship doesn't relieve Forest River of its obligations under the express warranty. Forest River presumes that the court in reaching this finding now merely needs to consider the handful of defects that it (not Sirpilla) repaired and the 36 days the unit was out of service for that to be accomplished. But that's not how this warranty or warranty law works. Forest River cannot abdicate its duties in warranty merely by designating a service center for repairs, at least not in the manner that occurred here. Though the MMWA allows a warrantor (like Forest River) to name "representatives to perform duties under the written or implied warranty," the law also explains that "no such designation shall relieve the warrantor of his direct responsibilities to the consumer." 15 U.S.C. § 2307. Indeed, in this respect, the MMWA's focus remains ever on the warrantor so long as Sirpilla has not become a cowarrantor: "if the product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part." 15 U.S.C. § 2304(4); *see also* 15 U.S.C. § 2307 ("no such designation shall . . . make the representative a cowarrantor").

But that also doesn't mean that consumers may abdicate their obligations under an express warranty—and one of those most often is notice to the manufacturer. To be sure, a dealer often facilitates that notice because the consumer comes to the dealer for repair work, the dealer procures authorization for repair work from the manufacturer (hence notice), and the dealer performs the work to get the consumer back on the road. Acknowledging that Sirpilla is not Forest River's agent, the court must still grapple with a key issue: whether Forest River had notice of the defects.

Forest River had notice of numerous issues with the Litsingers' RV, even if Sirpilla, and not Forest River, completed many of the repairs as the manufacturer's designee. Forest River required authorized service centers to get approval before attempting warranty repairs. Nothing in the record

indicates that this standard protocol wasn't followed. To the contrary, the record contains numerous warranty repair claim forms and work orders between the two companies demonstrating what Forest River learned (and when) and what it approved for repair under the warranty (and when). Forest River thus had notice of various, though not all, defects that Sirpilla tried to remedy, even without an agency relationship existing between the two companies.

Mathews faced a slightly inverted situation but still reached a consistent conclusion: "even assuming that we can count the repair attempts at [the repair center]—and it's doubtful that we should because [the manufacturer] was not notified about them—[the manufacturer] had only two chances to fix each of these problems." Mathews, 931 F.3d at 622. The two chances to repair defects in Mathews weren't enough to constitute a reasonable opportunity to cure. Id. Though Mathews wasn't called to address the impact of an agency relationship on this attribution, and though it seems unclear whether the repair center there was an "authorized dealership" or "independent dealership" (both of which were permitted under the Mathews warranty), the nature of the relationship between the manufacturer and the dealer was there immaterial because the court remained focused on the issues of notice and the opportunity to cure, not merely the work of agent to principal.

Thus in addition to notice, the court turns to the subject of whether Forest River had a reasonable opportunity to cure. The parties agree that a reasonable opportunity to cure must have been afforded. The Litsingers analyze this in the context of both repair attempts (like Mathews) and days out of service.

In Indiana, even two chances to cure a defect isn't a reasonable opportunity to cure. See, e.g., Mathews, 931 F.3d at 622 (drawing from Indiana's lemon law requirement of at least four attempts to hold that "two chances is not a reasonable opportunity to cure the defects such that the warranty failed of its essential purpose" in MMWA case). Though Mathews addressed this within the context of whether a warranty failed of its essential purpose, it has equal application here. See 15 U.S.C.

§ 2304(a)(4), 2310(e); *Castagna v. Newmar Corp.*, 2020 U.S. Dist. LEXIS 20121, 15 (N.D. Ind. Feb. 3, 2020) (DeGuilio, J.) (just two opportunities wasn't reasonable); *cf. Bordoni*, 2020 U.S. Dist. LEXIS 63919 at 8 (case presented triable issues for seven attempts in at least 140 days); *Hoopes v. Gulf Stream Coach Inc.,* 2017 U.S. Dist. LEXIS 218328, 5-6 (N.D. Ind. Apr. 13, 2017) (four repair attempts from January to July provided reasonable opportunity to cure); *see also Zylstra*, 2020 U.S. Dist. LEXIS 86341 at 15-16 (same); *Marchionna v. Ford Motor Co.,* 1995 U.S. Dist. LEXIS 11408, 11 (N.D. Ill. Aug. 10, 1995) (noting that "[t]he plurality of the word 'attempts' [in the statute] indicates that [the warrantor is] entitled to at least two . . . attempts to correct the defect"); *Teerling v. Fleetwood Motor Homes of Ind., Inc.*, 2001 U.S. Dist. LEXIS 7481, 16 (N.D. Ill. June 4, 2001); *Mooradian v. FCA US, LLC*, 2017 U.S. Dist. 178558, 9 (N.D. Ohio Oct. 27, 2017). This conclusion isn't mechanical here when the express warranty contemplates work by a service center and at least one final opportunity to remedy the issue by Forest River.

In their complaint, the Litsingers allege "substantial and numerous defects and non-conformities" that required "several failed repair attempts." The complaint alleges "about" 36 defects, three of which required more than one attempt, requiring the RV to be out of service for a total of 274 days. Forest River attempts to stick the Litsingers to the three unspecified defects as a judicial admission, though the pleading never says what they are. *See Soo Line R.R. v. St. Louis S.W. Ry.,* 125 F.3d 481, 483 (7th Cir. 1997) ("judicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible"); *accord Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995). But Forest River waived this argument by tucking it only in its reply; and nothing in this allegation strikes the court as unequivocal.

That said, Forest River asked about defects that required more than one repair in its interrogatories, and the Litsingers identified only three defects: the dinette slide, entry door spring, and silverware drawer. In response to summary judgment, the Litsingers expand their allegation of 36

defects to 58 defects at times in briefing, but curiously only 45 defects in their statement of genuine issues.[15] They said in sworn statements that only three items required more than one repair, but in briefing they vacillate between saying they reported 22 defects and then later 23 defects at least twice. They then say 50 defects were worked on—though at other times they say 47 were worked on, and then 36 were worked on—over 8 repair attempts and 248 days out of service. Other than adding to the utter morass, the shifting target of defects and repairs matters little because the court remains focused for now on notice and the reasonable opportunities to cure any given defect.

The Litsingers confirmed their interrogatory response in deposition—at least to the best of Ms. Litsinger's knowledge—that only the dinette slide, entry door spring, and silverware drawer required more than one attempt (ECF 79-2 at 92). But Forest River pressed on and presented her with the work orders that reflected their complaints, and she confirmed that these "repair sheets" accurately reflected the issues the Litsingers reported (*Id.* at 42-44). Her only correction was to indicate that the vent window seals concerned both the passenger and driver side doors, but the 2018 work orders, which she was given, corrected this (*Id.* at 43-44). In short, her documents seemed complete. After reviewing these repair sheets or work orders, she verified that she still believed the interrogatory response to be accurate (*Id.* at 92).

It appears these repair records are materially the same records on which the Litsingers, now at summary judgment, want to use to expand their claims beyond just these three defects. The Litsingers identify no missing record in what Ms. Litsinger was shown at deposition. Ms. Litsinger testified to none. The court's exhaustive independent review of these repair records might reveal a couple items that seemed to have three notices and attempts, but not in any way consistent with the Litsingers' chart of defects in their statement of genuine issues. But no matter, because the Litsingers corrected

---

[15] A 46th defect appears in the Litsingers' chart but remains unintelligible. The court disregards any statements from Thomas Bailey because the parties withdrew all proposed expert opinions in this case.

that interpretation in sworn statements—both in interrogatories and deposition—and said only three items required more than one repair attempt.[16]

The court won't go beyond two sworn admissions. The Litsingers never amended their interrogatory response under Rule 26(e) to correct their response about these three items, if indeed there were more, nor attempted to correct any deposition testimony, whether in clarifying questions during the deposition or on the errata sheet under Rule 30(e)(1), at least not on this record. The Litsingers invite the court to revisit these answers because they received a so-called late disclosure of business records from Sirpilla. This case has cycled through multiple discovery disputes, motions to compel, non-disclosure of records, motions for sanctions, duplicative briefing, numerous extensions to the scheduling order, and ultimately more than three separate trial dates. In considering dual motions for sanctions, the magistrate judge conducted a thorough analysis of the new March 6, 2020 documents only to find that the 148 photographs at issue were "either identical or nearly identical to photographs produced earlier" or "provided no new meaningful information," and that the "new" sales and repair records were "extremely similar to previously produced documents or were irrelevant to the issues in this case." The magistrate judge also found that the Litsingers hadn't articulated what new information in these documents necessitated redoing any expert report at the time. The Litsingers never objected to these findings, so the court adopted the report and recommendation. Left unchallenged, the court has no cause to revisit these conclusions. *See* Fed. R. Civ. P. 72; *Davis v. Kayira*,

---

[16] To be clear, the materials suggest eight defects were reported to Sirpilla three times or more, but it would seem not all of these had been reported to Forest River. There is no evidence that Sirpilla shared these notices to Forest River or billed Forest River for repair work, or that Forest River approved the work. An independent review suggests that two defects (Aqua-Hot and driver/passenger window seals) were reported to the manufacturer more than two times; but again, the Litsingers correct that interpretation in sworn statements. This may be because the warranty excluded coverage for certain items, including for instance "equipment and appliances."

938 F.3d 910, 917 (7th Cir. 2019). The Litsingers thus offer no reason to disregard their own sworn statements, and twice at that.

Taken now as gospel, if these are the only three defects that required more than one repair attempt, the only reasonable inference then is that all other defects had been repaired on the first attempt, or alternatively that no further notice or opportunity to cure had been given to Forest River. Either way, summary judgment must be granted on these other defect claims. *See, e.g., Mathews*, 931 F.3d at 622 (finding it "doubtful" that it should consider repair attempts when no notice was provided to the manufacturer, but ultimately concluding that even if the court did, two opportunities was not reasonable to sustain an express warranty claim); *Anderson*, 662 F.3d at 781-82 (notice is satisfied when the manufacturer has actual knowledge of the nonconforming good); *see also Zylstra*, 2020 U.S. Dist. LEXIS 86341 at 15 (MMWA standard). The Litsingers repeatedly say the defects weren't fixed during service work (ECF 100 at 5-7), but throughout briefing they continue to cite only generally to scores of repair records (ECF 100-10 to 100-18). They have not identified a single specific remark in these records that indicates that the items weren't fixed, and the court's review has revealed none. So much for truffles. *See Gross*, 619 F.3d at 702.

The court returns then to the three defects that required more than one repair. As to the dinette slide, Sirpilla repaired this issue before the Litsingers signed their purchase agreement and before the warranty became part of the basis of the bargain. *See* Ind. Code § 26-1-2-313(1)(a) (express warranty must become part of the basis of the bargain). In addition, on this record, there is no indication that Sirpilla ever reported this pre-purchase repair to Forest River or received reimbursement. Accordingly, the only notice and opportunity to cure occurred on October 18, 2017 and January 31, 2018. The Litsingers appear to have identified the issue as recurring six months later in April 2018 but never reported it to Sirpilla or Forest River (ECF 79-2 at 74). For lack of notice and lack of a reasonable opportunity to cure, and violation of the express warranty's terms to present the

42

unit for service within a reasonable amount of time after discovering a defect, summary judgment must be entered on this defect. *See Mathews*, 931 F.3d at 622.

As to the entry door spring and silverware drawer, the Litsingers presented the first issue only once on July 9, 2017 and the second issue only once on December 5, 2017. Even crediting the sworn statements from the Litsingers, however, the only reasonable inference here is that these items were fixed after the one report, or that the Litsingers never provided further notice to Forest River or a reasonable opportunity to cure. *See Mathews*, 931 F.3d at 622. Quite aside from not meeting the law, this fails to comply with the warranty's plain language that reserves to Forest River a final opportunity to remedy the issues.

Nor is the court inclined to view the time countable for these repairs as giving a reasonable jury the ability to conclude that Forest River breached its warranty. That would be unusual when the warranty has worked, and when no notice or reasonable opportunity to cure by law has been given. Even assuming the 248 days that the Litsingers proffer, this number would necessarily include days during which the RV was undergoing non-warranty repairs, was being winterized, was sitting at the repair facility after the Litsingers informed Sirpilla that they did not need it, and was at different repair facility undergoing repairs under a non-Forest River warranty (ECF 79-8 at 2 (chassis repair); 79-9 at 18 (awning repair); 79-7 at 6 (needs unit by spring)). This time isn't countable for the purpose of assessing the reasonableness of time for repairs. *See Zylstra*, 2020 U.S. Dist. LEXIS 86341 at 19 (stating that the time an RV is at a repair facility but not undergoing warranty repairs is not attributed to the days out of service calculation). The Litsingers offer no alternative calculation for the days out of service from December 5, 2017 to March 8, 2018 that should be attributed specifically to the silverware drawer, leaving it to the court to suss out, but no reasonable jury could think more than a handful of days, if even a day. No measurable time can be attributed to a door spring, particularly when the unit was out for 22 days to address 18 defects starting July 9, 2017. That leaves the slide work on October

18, 2017 that, among other defects, only took 14 days (excluding the chassis time that isn't covered by warranty). In short, no reasonable jury could conclude that Forest River breached its express warranty to address these defects, even if the time that Sirpilla took (reasonably less than three weeks) was attributed to Forest River. *See Zylstra*, 2020 U.S. Dist. LEXIS 86341 at 16, 31 (176 days out of service, in addition to the relatively low number of repair attempts, was not reasonable opportunity to cure under Indiana law); *cf. Wood v. Winnebago Indus.*, 2020 U.S. Dist. LEXIS 113046, 14-15 (D. Nev. Mar. 23, 2020) (not counting nine months of repairs by service center to manufacturer when it was not manufacturer's agent). Summary judgment must be entered on this claim, including under state law and the MMWA.

That leaves any other issues argued on summary judgment moot but raises a new issue— jurisdiction. The original basis of jurisdiction was federal question (the MMWA claim) and supplemental jurisdiction over the state law claims. The loss of the MMWA claims would seem to strip the court of federal question jurisdiction, though the court has invested substantial judicial resources in this matter and the case has nearly approached trial. *See Wright v. Assoc. Ins. Co.*, 29 F.3d 1244, 1251 (7th Cir. 1994). The court chooses to retain jurisdiction. Dismissing this matter would require another court to start from essentially scratch and substantially duplicate this court's work.[17] That rings particularly true when the parties have a settlement conference set for next week.

CONCLUSION

Accordingly, the court GRANTS Forest River's summary judgment motion (ECF 78), GRANTS IN PART and DENIES IN PART Sirpilla's summary judgment motion (ECF 80), leaving for trial only the claim that the recreational vehicle dealer violated Ohio's Consumer Sales Practices

---

[17] At oral argument, the parties confirmed that Sirpilla's members (as an LLC) were located in different states than the Litsingers, but never identified these members or their citizenship to sustain diversity jurisdiction (Tr. 20). *See* 28 U.S.C. § 1332(a).

Act, specifically Ohio Revised Code §§ 1345.02(B)(1), (B)(2) and Ohio Administrative Code § 109:4-3-16, and DENIES the Litsingers' partial summary judgment motion (ECF 84).

SO ORDERED.

April 30, 2021                              *s/ Damon R. Leichty*
                                            Judge, United States District Court